IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAR 0 7 2016

David J. Bradley, Clerk of Court

| | |
|---|---|
| DANYAL SHAIKH § | |
| Plaintiff § | |
| § | |
| v. § | NO. _____ |
| § | |
| TEXAS A&M UNIVERSITY § | |
| COLLEGE OF MEDICINE § | |
| And § | |
| MICHAEL K. YOUNG § | |
| Defendants § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES DANYAL SHAIKH, Plaintiff, by and through his counsels of record, Donald G. Henslee and Chigozie F. Odediran from the Law Offices of Donald G Henslee, complaining of TEXAS A&M UNIVERISTY, its President, MICHAEL K. YOUNG, (hereinafter collectively referred to as "Defendants") and files this his Original Complaint and Jury Demand and would respectfully show as follows:

### I. JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983; 28 U.S.C. § 1343(a)(3); 28 U.S.C. § 1331 28 U.S.C. § 1367; 29 U.S.C. § 794 and 42 U.S.C. §§ 12112, 12131–12150.

2. This Court has supplemental jurisdiction over State law claims discussed below under 28 U.S.C. § 1367 (a) because they arise out of the same case or controversy.

### II. VENUE

3. Venue is proper before this Court because the events and omissions giving rise to the Plaintiff's claims occurred in Brazos County, in the Southern District of Texas, Houston Division.

## III: PARTIES

4. At all times relevant to this action, Danyal Shaikh, Plaintiff herein, living in College Station, Texas was a student at Texas A&M University, College of Medicine in College Station. His permanent home address is 12514 Lusterleaf Dive, Cypress, Texas 77429.

5. Defendant Texas A&M University (Hereinafter referred to as TAMU) is a Texas governmental entity located at 401 Joe Routt Blvd, College Station, TX 77843. Defendant may be served with process through its President, Michael K. Young, at the same address.

6. Defendant Michael K. Young (Hereinafter referred to as Dr. Young) is the President of Texas A&M University, where he can be served with at 401 Joe Routt Blvd, College Station, TX 77843.

7. Defendant TAMU and Defendant Michael K. Young are hereinafter referred to as Defendants.

## IV. STATEMENT OF FACTS

8. Plaintiff is a Magna Cum Laude undergraduate of Texas A&M University with a Bachelor's of Science in Psychology.

9. Plaintiff became a student at Texas A&M College of Medicine in May 2010.

10. Plaintiff was accepted to Texas A&M University College of Medicine early in the admission cycle in December 2009. Plaintiff was accepted early ( pre-matched) into the admission process due to his academic achievements[1].

11. Plaintiff experienced success in his academic career while at TAMU undergraduate and TAMU College of Medicine.

12. Sometime in May 2012, as Plaintiff began to prepare for the United States Medical Licensing Examination (USMLE) Step 1[2], he began having trouble

---

[1] There are two admission cycles in Medical school. The first batch of students are those who perform exceptionally well on their undergraduate GPA, extracurricular activities, and at the Medical College Admissions Test (MCAT) and students who are generally more well rounded and qualified. The second admission cycle occurs in March and students who are admitted during this period are either accepted, denied or waitlisted.

[2] "The United States Medical Licensing Examination (USMLE) is the common evaluation system for all applicants for medical licensure in the United States… Step 1 assesses the medical school student's application of knowledge and understanding of key concepts of basic biomedical science, with an emphasis

studying and concentrating on school work. He expressed concerns to the Dean of Medical studies and other TAMU faculty.

13. Plaintiff continued to study for the Step 1 even though the symptoms persisted. Plaintiff had never before now experienced such symptoms.

14. Sometime in September 2012, Plaintiff emailed the Dean of Student Affairs Dr. Gary McCord to complain yet again about the persistent problems he encountered while studying.

15. Plaintiff took the USMLE Step 1 on the 29th of November 2012 and unfortunately did not pass due to the ongoing and undiagnosed health challenges he was experiencing.

16. On the 25th day of January 2013 TAMU advised Plaintiff to take a one year leave of absence (LOA) to enable him study effectively for the USMLE Step 1. At this same time, TAMU was aware of Plaintiff's ongoing medical struggles.

17. At about the same time, TAMU advised Plaintiff to make use of the 6 free mental and behavioral visits provided to medical students enrolled at TAMU.

18. These medical services were provided by TAMU staff and agents affiliated with TAMU.

19. On February 2013, Plaintiff commenced treatment with a psychologist who was affiliated with TAMU college of medicine.

20. After two un-productive visits, TAMU's psychologist referred Plaintiff to TAMU employee and agent psychiatrist Dr. Michael Brown.

21. In February 2013, Dr. Brown, a TAMU staff, employee or agent began treatment on Plaintiff and diagnosed him with Test Phobia, Anxiety and Depression.

22. TAMU treated Plaintiff from February 2013 till December 2013. During this time, defendants never ran any blood work or tests on Plaintiff to determine the cause of Plaintiff's symptoms. Instead, TAMU put plaintiff on anti-depressants, anxiety and blood pressure medications without a thorough determination or physical exam of Plaintiff's symptoms.

---

on principles and mechanisms of health, disease, and modes of therapy". *Texas A&M Health Science Center College of Medicine, Student Handbook for College of Medicine Student revised 2014.*

23. All through his LOA, Plaintiff's symptoms worsened as he continued psychiatric treatments with TAMU. He experienced nervousness, dizziness, severe headaches, nausea, diarrhea, constipation, upset stomach, stomach pain, eye pain, abnormal ejaculation, difficulty having an orgasm, dry mouth, decreased impulse control, irritability, weight gain without a change in diet, increased lethargy, change in sleep patterns, worsened inability to concentrate, lack of motivation, increased anxiety, loss of sexual desire, severe emotional distress all the while being pressured by the Student Promotion Committee urging him to take the USMLE by certain arbitrary deadlines.

24. These arbitrary deadlines came with the threat of dismissal which caused additional undue stress and trauma to the Plaintiff as he had a one-year leave of absence in which to take the USMLE.

25. Plaintiff's symptoms worsened because the anti-depressants which were prescribed by TAMU had the opposite effect on Plaintiff's true medical condition.

26. Because Plaintiff's symptoms did not get better and his condition subsequently worsened, plaintiff could not sit for the USMLE for the one year while he was on the leave of absence.

27. Plaintiff's LOA ended January 2014, at this point, the Student Promotion Committee voted to dismiss him even though they knew that he had health challenges all through his LOA.

28. Prior to the onset of Plaintiff's symptoms, Plaintiff had never failed any of his classes at the TAMU college of medicine and had successfully passed all the required curriculum during his tenure at medical school to satisfactorily progress to 3rd year of medical school at TAMU, including 3rd year clinical rotations in which he passed with honors.

29. Plaintiff appealed the decision and was given the ultimatum to withdraw or be dismissed from TAMU college of medicine. Plaintiff choose to withdraw from TAMU because a withdrawal gave him an option to be re-admitted into the TAMU or other medical colleges.

30. Plaintiff was advised and even urged by the TAMU faculty to withdraw from the college of medicine under the impression that he would be reinstated.

31. Plaintiff was forced to withdraw as a third year medical student with just one year to complete medical school.
32. After filling for withdrawal, Plaintiff met with Dean of admissions who advised Plaintiff to reapply.
33. After withdrawal, TAMU placed a block on Plaintiff's access to his academic records (undergraduate and graduate transcripts), completely disabling him from further pursuit of his education elsewhere or to establish another career path with his undergraduate degree.
34. In Fall of 2014, Plaintiff applied to be re-admitted into TAMU medical school based on the mis-leadings of TAMU college of medicine faculty.
35. During the admission interviews, Plaintiff was yet again misled by TAMU faculty telling him that they wanted him back at the college of medicine. TAMU faculty also advised him that he had a good chance of being accepted back into the college of medicine as a third year student.
36. Unfortunately, Plaintiff was denied re-admission into the University despite being advised and prompted by the faculty to re-apply with a near guarantee of re-admission even with a clearance from a psychiatrist.
37. Plaintiff met with TAMU administrators who told him that the reason he was denied re-admission was because "he was not an acceptable applicant and that he was a liability for psychiatric reasons".
38. Plaintiff met with Dean of admissions after his first denial of re-acceptance and was advised by the Dean of Medicine to "100% re-apply for admission again for the 2016 entry year cycle".
39. Plaintiff re-applied for reinstatement a 2nd time in June 2015 (with supporting letters from the Dean of College of Medicine and Dean of Student affairs.)
40. Because Plaintiff was not getting better with the medication prescribed by TAMU's psychiatrist, Plaintiff started to research into his medical condition.
41. Based on medical knowledge acquired while in medical school, Plaintiff was able to self diagnose himself. He prompted his primary care physician to run some tests and blood work as he suspected that he had a Pituitary Tumor.

42. Blood work and MRI confirmed that Plaintiff did indeed have a brain tumor called a Prolactinoma[3]. TAMU could have ordered a simple blood test which would have easily detected abnormal hormone levels, appropriate treatment would have started at the initial time he complained to TAMU and Plaintiff would not have had to endure these years of stress and permanent record of being withdrawn from TAMU College of Medicine.

43. Prolactinoma causes an increase in the production of a hormone called prolactin. In plaintiff's case, this caused his testosterone to be very low which could have caused loss of memory and concentration, depression, anxiety, extreme fatigue and muscle weakness.[4]

44. Plaintiff underwent immediate medical protocol which reversed the growth of tumor and progesterone level within four-months. There was no need for surgery. The tumor was also non-cancerous. Plaintiff's treating endocrinologist has noted that Mr. Shaikh's current medication has no side effects and he is fully capable of returning to Medical school.

45. Plaintiff armed with the knowledge that he did not have a psychiatric illness but a treatable brain tumor, re-applied for admission only to be denied once again.

46. Prior to the second application process, Plaintiff was once again advised by TAMU faculty to strengthen his application by re-taking the USMLE Step 1 and to engage in other endeavors to make him a more viable candidate.

47. At the time of this ill- advice, Plaintiff was no longer a student at TAMU, yet TAMU faculty advised him to take the USMLE to "strengthen his re-application". USMLE exams are only taken by students currently enrolled in a medical program.

48. As a result of this ill- advice, Plaintiff enrolled to sit for the USMLE only for the National Board of Medical Examiners (NBME) to sanction him with irregular

---

[3] A Prolactinoma is a tumor of the pituitary gland that produces a hormone called prolactin. It is the most common type of pituitary tumor. Symptoms of Prolactinoma are too much prolactin in the blood (hyperprolactinemia), or those caused by pressure of the tumor on surrounding tissues" Glezer A, Bronstein MD (2015). "Prolactinomas". *Endocrinol Metab Clin North Am.* **1** (44): 71–78 https://en.wikipedia.org/wiki/PubMed_Identifier

[4] Per plaintiff's endocrinologist, Susan L. Samson, MD PhD FRCPC FACE Medical Director Pituitary Center, Associate Professor of Medicine ,Baylor College of Medicine endocrinology director.

*Danyal Shaikh, Plaintiff's Original Complaint*                                                                 6

behavior because he was not currently enrolled in a medical program. Plaintiff would forever have the tag of "irregular behavior" attached to NBME certificate.

49. Pursuant to the advice Plaintiff received from TAMU faculty, he enrolled in a Masters of Anesthesiology program in Case Western Reserve University just so that his re-application could be strengthened.

50. Despite all the efforts put in by Plaintiff to self- diagnose himself, take the USMLE as advised by TAMU, enroll in a Masters of Anesthesiology program, also as advised by TAMU, Plaintiff was denied re-instatement twice into the college of medicine.

51. Plaintiff has not been given a valid reason for TAMU's refusal to re-admit him.

## V. FIRST CAUSE OF ACTION – DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990, as amended ("ADA") AND SECTION 504 OF THE REHABILITATION ACT OF 1973 ("Section 504")

52. The recitations contained in the Statement of Facts above are incorporated in this section as if repeated herein.

53. Plaintiff is a protected disabled individual under The Americans with Disabilities Act, 42 U.S.C. § 12131-12150, where a disabled person is defined as an individual who has a physical or mental impairment that substantially limits one or more of the major life activities of an individual or who has a record of such an impairment, or an individual who is being regarded as having such an impairment.

54. Defendants, through its agents and authorities, intentionally discriminated against Plaintiff in connection with failing to re-admit Plaintiff in violation of the American with Disabilities Act even though he was more than qualified to be re-instated into third year of medical school.

55. The effect of Defendant's practices has been to deprive the Plaintiff of equal opportunity to be re-instated back into school and otherwise adversely affect his status as a third year medial student.

56. At all material times, Plaintiff was and is still able to perform the essential

function of a third year medical student[5].

57. Plaintiff was discriminated against on the basis of the perception of having a disability. Defendant's regarded plaintiff as having such an impairment and as a result failed to re-instate him because they believed that he was a psychiatric liability.

58. Defendants denied Plaintiff a fair opportunity to demonstrate that his medical symptoms were caused by a treatable organic disease and not mental illness. As a result, the defendants improperly regarded the plaintiff as having such an impairment and discriminated against him as such.

59. Plaintiff was excluded, denied re-admission, segregated or otherwise treated differently than other individuals because TAMU regarded him as being a "psychiatric liability".

60. Defendant's admission committee policies, procedures and practices intentionally exploited Plaintiff, an individual regarded as having a disability in order to discriminate against him.

61. Defendants actions subjected Plaintiff to discrimination on the basis of a perceived disability such that it amounted to a denial of the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity.

62. Defendants are responsible for its policies, procedures, and practices thereby ensuring that Plaintiff and all individuals with disabilities have equal access to a medical education.

63. Defendants discriminated against Plaintiff by the imposition or application of eligibility criteria that screened out to an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodation, thereby violating the ADA.

64. TAMU is the recipient of federal funds.

---

[5] Plaintiff is currently a tutor at Varsity tutors where he tutors medical college students on anatomy, organic chemistry, biology and other medical sciences.

## VI: SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS – 42 U.S.C. SECTION 1983

65. Plaintiff repeats and incorporates all the allegations of this Complaint, as if fully set forth herein.

66. U.S.C § 1983 provides a private right of action for damages to individuals who are deprived of any rights, privileges or immunities protected by the Constitution or federal law by any person acting under the color of state law.

67. TAMU and President Young in his official capacity have deprived Plaintiff of his rights, privileges or immunities protected by the Constitution and federal law.

68. Acts committed by TAMU and President Young in his official capacity were the proximate cause of Plaintiff's injuries.

69. The Defendants have acted intentionally and with callous disregard for Plaintiff's clearly established constitutional rights.

70. Defendants and its agents have undertaken actions which have worked to limit Plaintiff's participation in the institution's educational programs and/or activities.

71. As a direct and proximate cause of the Defendants' violation of Plaintiff's constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include diminished earnings capacity, lost career and business opportunities, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

72. Pursuant to 42 U.S.C. §1983, the Defendants are liable to Plaintiff for his damages.

73. Pursuant to 42.U.S.C. § 1988, Plaintiff is entitled to his attorney fees incurred in bringing this action.

## VII. THIRD CAUSE OF ACTION
## DAMAGE TO REPUTATION

74. Plaintiff repeats and incorporates all the allegations of this Complaint, as if fully set forth herein.

75. Defendants have caused great harm to Plaintiff's reputation by their actions

without good cause or due process of law. These actions were taken with a conscious indifference to Plaintiff's rights enumerated herein and are a part of a pattern and practice of disregard for students' legal and constitutional rights.

76. TAMU's college of medicine is universally acknowledged to be a top rated program in the United States. Plaintiff's dismissal from the program forces him to enroll in a lesser program, damaging his reputation and diminishing his lifetime earnings.

77. Plaintiff has been deprived of an important property interest. He is left burdened by additional student loans and related costs due to the costs of transferring to another university after his dismissal and other costs and expenses and the damage to his reputation.

78. Plaintiff has been deprived of his liberty interest in his reputation.

79. Defendant's reputation has been damaged greatly because of the illegal and unconstitutional acts of TAMU, its staff and administration.

80. Defendant's actions were the proximate cause of Plaintiff's injuries.

## VII. FOURTH CAUSE OF ACTION
## INJUNCTIVE RELIEF

81. Plaintiff repeats and incorporates all the allegations of this Complaint, as if fully set forth herein.

82. The Defendants continued actions violate the United States Constitution and the ADA provisions and other federal law mentioned herein.

83. The Defendants continued actions against the Plaintiff is causing substantial, immediate and continuing damages.

84. Plaintiff will suffer irreparable harm if the Defendant is allowed to continue its present course of action.

85. There is no adequate remedy at law.

86. Plaintiff has exhausted all administrative remedies.

## VIII. DAMAGES

87. Plaintiff is entitled to damages in excess of the jurisdictional limits of this court to

compensate Plaintiff for:

a. Reimbursement for additional tuition, costs and fees at another medical school if he has to enroll therein.

b. Damages in an amount exceeding the jurisdictional limits of this court for discriminating and denying re-admission to plaintiff under the Americans with Disabilities Act.

c. Lifetime economic damages caused by the necessity to transfer to an institution of lesser prestige.

d. Economic damages caused by the defendant's refusal to re-admit Plaintiff, casing him to incur re-admission fees and tuition fees incurred for one semester at Case Western Reserve University for Masters in Anesthesiology

e. Damages in an amount exceeding the jurisdiction of this court for irreparable damage caused to the plaintiff's career chances whereas he his forever labelled by the National Board of Medical Examiners [NBME] with an irregular behavior.

f. Damages in an amount exceeding the jurisdiction of this court for damage to Plaintiff's reputation as a result of being stigmatized as having mental illness.

g. Damages for violations of Plaintiff's constitutional rights in an amount exceeding one million dollars ($1,000,000) dollars.

h. Damages for violations of state and federal laws and regulations.

i. Punitive damages in an amount sufficient to punish Defendant for its illegal and unconstitutional behaviors and actions and discourage it from acting in a like manner in the future.

j. Recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, together with pre- and post-judgment interest, and court costs expended herein

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in the manner and particulars noted above, and

- in an amount sufficient to fully compensate Plaintiff for the elements of damages

enumerated above, and judgment for damages,

- Declaratory judgment finding that Plaintiff's rights have been denied in violation of federal law;
- Compensatory damages incurred in the past, present and future;
- A finding that the conduct of TAMU has been in violation of federal law (discrimination based on disability);
- An injunction restoring Plaintiff as a third year medical student and prohibiting further disciplinary proceedings in a manner that violates the United States Constitution or the ADA
- And for such other relief as this Court in law and in equity, deems just and proper

Respectfully submitted,

/S/ DONALD G. HENLSEE
**Donald G. Henslee**
Attorney at Law
Law Offices of Donald G. Henslee
901 Mopac Expressway South
Barton Oaks Plaza One Suite 300
Austin, Texas 78746
State Bar Number 09488500
(512) 320-9177 [Telephone]
(512) 597-1455 [Facsimile]
dhenslee@school-law.co [Email]

/s/ CHIGOZIE F. ODEDIRAN
**Chigozie F. Odediran(Ms.)**
Attorney at Law
Law Offices of Donald G. Henslee
901 Mopac Expressway South
Barton Oaks Plaza One Suite 300
Austin, Texas 78746
State Bar Number 24098196
(512) 320-9177 [Telephone]
(512) 597-1455 [Facsimile]
codediran@school-law.co [Email]

**ATTORNEYS FOR PLAINTIFF**