IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DANYAL SHAIKH § | |
|     Plaintiff § | |
| § | |
| v. § | NO. 4:16-CV-00591-H |
| § | |
| TEXAS A&M UNIVERSITY § | |
| COLLEGE OF MEDICINE, § | |
| MICHAEL K. YOUNG § | |
| (in his official capacity) § | |
| PAUL OGDEN M.D  AND § | |
| MICHAEL L. BROWN M.D § | |
| (Individually) § | |
| § | |
|     Defendants § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES DANYAL SHAIKH, Plaintiff, by and through his counsels of record, Donald G. Henslee and Chigozie F. Odediran from the Law Offices of Donald G Henslee and Martin Cirkiel of the Law Firm of Cirkiel & Associates P.C complaining of TEXAS A&M UNIVERISTY, DR. PAUL OGDEN and  DR. MICHAEL L. BROWN, (hereinafter collectively referred to as "Defendants") and files this his First Amended Complaint and Jury Demand and would respectfully show as follows:

### I.    BRIEF INTRODUCTION TO THE CASE

This is a case where  Plainitff , a third year medical student was constructively dismissed from Texas A&M College of Medicine. Defendants misdiagnosed Plaintiff as having Test Anxiety and Depression , treated him for those disorders and finally forced Plainitff to withdraw from School. Upon seeking medical treatment outside of school, Plainitff found out that he had a treatable pituitary tumor . He has since been certified as fit to re-enter medical college but Defendants have failed to re-admit him .

## II.     JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983; 28 U.S.C. § 1343(a)(3); 28 U.S.C. § 1331 28 U.S.C. § 1367; 29 U.S.C. § 794 and 42 U.S.C. §§ 12112, 12131–12150.

2. This Court has supplemental jurisdiction over State law claims discussed below under 28 U.S.C. § 1367 (a) because they arise out of the same case or controversy.

## III.     VENUE

3. Venue is proper before this Court because the events and omissions giving rise to the Plaintiff's claims occurred in Brazos County, in the Southern District of Texas, Houston Division.

## IV.     PARTIES

4. At all times relevant to this action, Danyal Shaikh, Plaintiff herein, living in College Station, Texas was a student at Texas A&M University, College of Medicine in College Station. His permanent home address is 12514 Lusterleaf Dive, Cypress, Texas 77429.

5. Defendant Texas A&M University (Hereinafter referred to as "Medical School") is a Texas governmental entity located at 401 Joe Routt Blvd, College Station, TX 77843. Defendant may be served with process through its President, Michael K. Young, at the same address.

6. Defendant TAMU and Defendant Michael L. Brown ( in his individual capcity), Defendant Paul Ogden, Dean of Medical School Texas A&M Health Science Center College of Medicine are hereinafter referred to as Defendants.

7. Defendant Paul Ogden, Dean of Medical School Texas A&M Health Science Center College of Medicine may be served with process through its President, Michael K. Young, at the same address above.

8. Defendant Michael L. Brown may be served with process at his current primary practice Address  333 Dr. Michael Debakey Drive, Suite 220 Lake Charles, LA 70601.

## V.   ABOUT DEFENDANT TEXAS A&M HEALTH SCIENCE CENTER COLLEGE OF MEDICINE

9. Texas A&M Health Science Center College of Medicine is part of the the Texas A&M Univeristy (TAMU).

10. Texas A&M Health Science Center College of Medicine operates in accordance with general University regulations as published in Texas A&M University Student Rules.

11. Texas A&M Health Science Center College of Medicine has two admission cycles for its propective medical students . The first batch of students admitted sometime around December are those who perform exceptionally well on their undergraduate GPA, extracurricular activities, and at the Medical College Admissions Test (MCAT) and students who are generally more well rounded and qualified. The second admission cycle occurs in March . Students who are admitted during this period are either accepted, denied or waitlisted.

## VI.   ABOUT PLAINTIFF DANYAL SHAIKH

12. Plaintiff is a Magna Cum Laude undergraduate of Texas A&M University with a Bachelor's of Science in Psychology.

13. Plaintiff became a student at Texas A&M College of Medicine in May 2010.

14. Plaintiff was accepted to Texas A&M University College of Medicine early in the admission cycle in December 2009. Plaintiff was accepted early ( pre-matched) into the admission process due to his academic achievements..

15. Plaintiff experienced success in his academic career while at TAMU undergraduate and TAMU College of Medicine.

16. Sometime in May 2012, as Plaintiff began to prepare for the United States Medical Licensing Examination (USMLE) Step 1[1], he began having trouble studying and concentrating on school work. He expressed concerns to the Dean of Student Affairs

---

[1] "The United States Medical Licensing Examination (USMLE) is the common evaluation system for all applicants for medical licensure in the United States… Step 1 assesses the medical school student's application of knowledge and understanding of key concepts of basic biomedical science, with an emphasis on principles and mechanisms of health, disease, and modes of therapy". *Texas A&M Health Science Center College of Medicine, Student Handbook for College of Medicine Student revised 2014.*

Dr Gary McCord at the Medical School.

17. Plaintiff continued to study for the Step 1 even though the symptoms persisted. Plaintiff had never before now experienced such symptoms.

18. Sometime in September 2012, Plaintiff emailed the Dean of Student Affairs Dr. Gary McCord to complain yet again about the persistent problems he encountered while studying. Dr. McCord advised Plainitff to utilitize the 6 free mental and behavioral visits available to all medical students enrolled at TAMU.

19. Plaintiff took the USMLE Step 1 on the 29th of November 2012 and unfortunately did not pass due to the ongoing and undiagnosed health challenges he was experiencing.

20. On the 25th day of January 2013 Dr. Gary McCord advised Plaintiff to take a one year leave of absence (LOA) to enable him study effectively for the USMLE Step 1. At this time, the college of medicine was aware of Plaintiff's ongoing medical struggles.

21. At about the same time, Plaintiff decided to heed Dr. McCord's advise to make use of the 6 free mental and behavioral visits provided to medical students enrolled at the Medical School.

22. The list of the medical providers who provided the 6 free mental and behavioral visits was provided by Kathleen Fallon M.D., Senior Associate Dean for Student Affairs, at the Medical School.

23. On January 29, 2013, Plaintiff commenced treatment with a Patrick Ray, PhD and Kathy Roblyer, NP who are affiliated with the Medical School.

24. After two un-productive visits, Kathy Roblyer, NP referred Plaintiff to TAMU employee and agent psychiatrist Dr. Michael Brown, M.D.

25. On February 2013, Dr. Brown, a TAMU staff, employee or agent began treatment on Plaintiff and diagnosed him with Test Phobia, Anxiety and Depression.

26. Dr.Brown treated Plaintiff from February 2013 till December 2013. During this time, Dr. Brown never ran any blood work or tests on Plaintiff to determine the cause of Plaintiff's symptoms. Instead, he put plaintiff on anti-depressants, anxiety and blood pressure medications without a thorough determination or physical exam of Plaintiff's symptoms. Dr. Brown not only treated Plainitff in his capacity as a TAMU staff but also in his individual capacity at his private office at Scott and White, College Station on a number of occasions.

27. All through his Leave of Absence (LOA), Plaintiff's symptoms worsened as he continued psychiatric treatments with the Medical School and Dr. Brown. He experienced nervousness, dizziness, severe headaches, nausea, diarrhea, constipation, upset stomach, stomach pain, eye pain, abnormal ejaculation, difficulty having an orgasm, dry mouth, decreased impulse control, irritability, weight gain without a change in diet, increased lethargy, change in sleep patterns, worsened inability to concentrate, lack of motivation, increased anxiety, loss of sexual desire and severe emotional distress . During this period he was also pressured by the Student Promotion Committee urging him to take the USMLE by certain arbitrary deadlines .
28. These arbitrary deadlines came with the threat of dismissal which caused additional undue stress and trauma to the Plaintiff even though he had the one-year leave of absence in which to take the USMLE.
29. Plaintiff's symptoms worsened because the anti-depressants which were prescribed by Dr. Brown had the opposite effect on Plaintiff's true medical condition.
30. Because Plaintiff's symptoms did not get better and his condition subsequently worsened, plaintiff could not sit for the USMLE for the one year while he was on the leave of absence.

## VII. DANYAL SHAIKH IS DIMISSED FROM MEDICAL SCHOOL

31. Plaintiff's LOA ended January 2014, at this point, the Student Promotion Committee voted to dismiss him even though they knew that he had health challenges all through his LOA.
32. Prior to the onset of Plaintiff's symptoms, Plaintiff had never failed any of his classes at the Medical School and had successfully passed all the required curriculum during his tenure at medical school to satisfactorily progress to 3rd year of medical school at TAMU, including 3rd year clinical rotations in which he passed with honors.
33. Plaintiff appealed the decision to dismiss him but the Appeal Committee gave him an ultimatum to either withdraw or be dismissed from the Medical School. Plaintiff choose to withdraw from TAMU because a withdrawal gave him an option to be re-admitted into the TAMU or other medical colleges.

34. Plaintiff was advised and even urged by Dean of Medical School Dr. Paul Ogden to withdraw from the Medical School under the impression that he would be reinstated.
35. Plaintiff took the advice of Dean of Medical School Dr Paul Ogden and was compelled to withdraw as a third year medical student with just one year to complete medical school.
36. After filling for withdrawal, Plaintiff met with Dean of Student Affarirs Dr Gary McCord who informed Plaintiff that the Dean of Medical School Dr Paul Ogden was open to the idea of having Plaintff being readmitted stating "*On a positive note, however, the Dean has indicated to me that if you reapply for admission at some point that he would entertain your being readmitted and having a chance to take the test prior to signing up for any classes. He also is willing to take another look at your reinsertion point into the curriculum*"
37. After withdrawal, TAMU Student Business Services placed a block on Plaintiff's access to his academic records (undergraduate and graduate transcripts), completely disabling him from further pursuit of his education elsewhere or to establish another career path with his undergraduate degree.
38. In Fall of 2014, Plaintiff applied to be re-admitted into the Medical School based on the representation of TAMU college of medicine faculty that he would be readmitted.
39. During the admission interviews, Plaintiff was yet again misled by TAMU faculty Paul C. Brandt Ph.D Vice Chair of Student Promotions Committee and Dr. Rania Cannaday M.D. who told him telling him that they wanted him back at the Medical School . They advised him that he had a good chance of being accepted back into the Medical School as a third year student.
40. Unfortunately, Plaintiff was denied re-admission into the Medical School even with a clearance from a psychiatrist despite being advised and prompted by the faculty Dr. Ogden to re-apply with a near guarantee of re-admission.
41. Plaintiff met with Dean of Admission Mr. Maldonado who told him that the reason he was denied re-admission was because "he was not an acceptable applicant and that he was a liability for psychiatric reasons".
42. Plaintiff met with Dr. Ogden after his first denial of re-acceptance and was advised to "100% re-apply for admission again for the 2016 entry year cycle".

43. Plaintiff re-applied for reinstatement a 2nd time in June 2015 (with supporting letters from the Dean of College of Medicine Dr Ogden and Dean of Student affairs Dr. McCord.

44. Because Plaintiff was not getting better with the medication prescribed by TAMU's psychiatrist Dr. Brown, Plaintiff started to research into his medical condition.

45. Based on medical knowledge acquired while in medical school, Plaintiff was able to self diagnose himself. He prompted his primary care physician to run some tests and blood work as he suspected that he had a Pituitary Tumor.

46. Blood work and MRI confirmed that Plaintiff did indeed have a brain tumor called a Prolactinoma[2]. Dr. Brown should have ordered a simple blood test which would have easily detected abnormal hormone levels, appropriate treatment would have started at the initial time he complained to Dr. Brown and Plaintiff would not have had to endure these years of stress and permanent record of being withdrawn from TAMU College of Medicine.

47. Prolactinoma causes an increase in the production of a hormone called prolactin. In plaintiff's case, this caused his testosterone to be very low which caused loss of memory and concentration, depression, anxiety, extreme fatigue and muscle weakness.[3]

48. Plaintiff underwent immediate medical protocol which reversed the growth of tumor and progesterone level within four-months. There was no need for surgery. The tumor was also non-cancerous. Plaintiff's treating endocrinologist has noted that Mr. Shaikh's current medication has no side effects and he was and continues to be capable of returning to Medical school.

49. Plaintiff now armed with the knowledge that he did not have a psychiatric illness but a treatable brain tumor, re-applied for admission to the medical school. Nevertheless, he was denied admission.

---

[2] A Prolactinoma is a tumor of the pituitary gland that produces a hormone called prolactin. It is the most common type of pituitary tumor. Symptoms of Prolactinoma are too much prolactin in the blood (hyperprolactinemia), or those caused by pressure of the tumor on surrounding tissues" Glezer A, Bronstein MD (2015). "Prolactinomas". *Endocrinol Metab Clin North Am.* **1** (44): 71–78 https://en.wikipedia.org/wiki/PubMed_Identifier

[3] Per plaintiff's endocrinologist, Susan L. Samson, MD PhD FRCPC FACE Medical Director Pituitary Center, Associate Professor of Medicine ,Baylor College of Medicine endocrinology director.

50. Prior to the second application process, Plaintiff was once again advised by Dean of Admissions Mr Filo Maldonado to strengthen his application by re-taking the USMLE Step 1 and to engage in other endeavors to show that he he kept his clinical and medical knowledge relevant.

51. At the time of this advice, Plaintiff was no longer a student at TAMU, yet TAMU advised him to take the USMLE to "strengthen his re-application". USMLE exams are only taken by students currently enrolled in a medical program.

52. As a result of this advice, Plaintiff enrolled to sit for the USMLE. As a result the National Board of Medical Examiners (NBME) sanctioned him with irregular behavior because he had enr signed up for the test but was not enrolled in a medical program. Plaintiff would forever have the tag of "irregular behavior" attached to NBME certificate.

53. Pursuant to the advice Plaintiff received from the Dean of Admissions Mr. Maldonado, he enrolled in a Masters of Anesthesiology program in Case Western Reserve University just so that his re-application could be strengthened.

54. Despite all the efforts put in by Plaintiff to self- diagnose himself, take the USMLE , enroll in a Masters of Anesthesiology program, as advised by TAMU staff, Plaintiff was denied re-instatement twice into the college of medicine.

55. Plaintiff has never been given a valid reason for TAMU's refusal to re-admit him.

## VIII.   STATE ACTION

56. The recitations contained in the Statement of Facts above are incorporated in this section as if repeated herein.

57. In addition, each portion below likewise will incorporate by reference any such allegation above it, also as though set forth at length therein.

58. The Defendant Medical School was at all times and in all matters acting under color of federal and state law in regard to the acts and omissions alleged by Plaintiff.

59. The Defendant Medical School was at all times and in all matters receiving federal funds during the period in question.

## IX. FIRST CAUSE OF ACTION –
## DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

60. Plaintiff is a protected disabled individual under the *Americans with Disabilities Act*, 42 U.S.C. § 12131-12150, as he is an individual who has a physical or mental impairment that substantially limits one or more of his major life activities, is an individual or who has a record of such an impairment, and is an individual who is being regarded as having such an impairment.

61. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

62. The Texas A&M Medical School is a, "public entity" as defined in 42 U.S.C. §12131(1), and also receives federal financial assistance so as to be covered by the mandate of the ADA.

63. The Medical School and its schools are facilities and their operation constitutes a program and services for ADA purposes.

64. Importantly, at all material times, Plaintiff was and is still able to perform the essential functions of a third year medical student.

65. The Defendant Medical School has failed and refused to reasonably accommodate and modify its services during the entire educational and grading process, appeal and dismissal processes, as applied to Plaintiff, in violation of Title II of the ADA.

66. Such acts and omissions rise to the level of intentional discrimination under the ADA.

67. Plaintiff has been injured thereby.

68. Pursuant to the ADA, the Defendant Medical School is liable to Plaintiff for his damages.

69. Pursuant to the ADA, Plaintiff is entitled to an award of attorney fees and costs incurred in bringing this action.

## X. SECOND CAUSE OF ACTION-
## DISCRIMINATION UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973

70. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and its implementing regulations require that each state that receives disbursements, including the state's

political subdivisions such as a state university like Texas A&M University, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled students unique and individualized needs, and fails to accommodate that student's disability and make necessary modifications, it violates Section 504.

71. Plaintiff is a "qualified individual with a disability," pursuant to Section 504, as defined in the rules and regulations promulgated thereunder.
72. In addition, Texas A&M Medical School is a, "public entity" as defined pursuant to Section 504, as defined in the rules and regulations promulgated thereunder.
73. Most importantly for Section 504 purposes the Defendant Medical School also receives federal financial assistance so as to be covered by the mandate of Section 504.
74. Moreover, the Defendant Medical School and its schools are facilities and their operation constitutes a program and services for Section 504 purposes.
75. Importantly, at all material times, Plaintiff was and is still able to perform the essential functions of a third year medical student.
76. Plaintiff asserts that because the Defendant Medical School failed to provide Plaintiff accommodations and modifications to the educational environment so that he could remain in the medical program, such failures as noted above, have, together and separately, contributed to violating his rights under Section 504, federal rules and regulations promulgated pursuant thereto.
77. Such acts and omissions rise to the level of intentional discrimination under Section 504.
78. Plaintiff has been injured thereby.
79. As such, pursuant to Section 504 the Defendant Medical School is liable to Plaintiff for his damages.
80. Pursuant to Section 504 Plaintiff is entitled to an award of his attorney fees and costs incurred in bringing this action.

## XI.     THIRD CAUSE OF ACTION-
## VIOLATION OF CIVIL RIGHTS – 42 U.S.C. SECTION 1983

81. U.S.C §1983 provides a private right of action for damages to individuals who are deprived of any rights, privileges or immunities protected by the Constitution or federal law by any person acting under the color of state law.

82. Plaintiff has both a property interest and liberty interest in his public education that would lead to a professional license as a physician, such a right guaranteed to him pursuant to the *Due Process* clause of the 14th Amendment to the United States Constitution.  This is a "substantive due process" right.

83. As an extension of Plaintiff's property and liberty interest in his public education and rights guaranteed to him pursuant to the *Due Process* clause of the 14th Amendment to the United States Constitution, he also has a number of procedural due process rights.  They include but is not limited to assurances that the grading system must be objectively verifiable, reliable and fundamentally fair.

84. In addition and in the alternative, any decision related to dismissal from the medical school must be careful and deliberate, focused upon professional judgment, not substantially depart from acceptable academic standards and focus on the entire education so as to also satisfy any procedural due process requisites.

85. The TAMU and President Young in his official capacity have deprived Plaintiff of his rights, privileges or immunities protected by the Constitution and federal law in the manner and particulars as noted above, both substantively and procedurally.

86. In addition and also in alternative to all the above, the Defendant Medical School violated Plaintiff's rights pursuant to a *class-of-one theory*, pursuant to the Equal Protection Clause of the Due Process Clause of the 14th Amendment to the U.S. Constitution.

87. Moreover, such and omissions by the Medical School Defendant were the proximate cause of Plaintiff's injuries.

88. The Defendant Medical School has acted intentionally and with callous disregard for Plaintiff's clearly established constitutional rights, whether they be substantive, procedural or both.

89. As such, pursuant to Section 1983 the Defendant Medical School is liable to Plaintiff for his damages.

90. Pursuant to Section 1983 Plaintiff is entitled to an award of his attorney fees and costs incurred in bringing this action.

## XII.   FOURTH CAUSE OF ACTION- CONTRACT CLAIMS PURSUANT TO 42 U.S.C. §1981

91. 42 U.S.C. §1981 states that "All persons within the Jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." A contract for educational services is a contract for proposes of 42 U.S.C. §1981.

92. When Plaintiff entered the Medical School he agreed to follow certain standards of academic proficiency so as to be able to remain at school.  In return, the Medical School agreed to provide certain academic and non-academic services so as to give him the best opportunity to best fulfill their agreement.

93. In addition, and in the alternative to the above, Plaintiff detrimentally relied upon a number of verbal and email representations made by the Medical School Defendant and Dr. Paul Ogden such representations creating a contractual relationship thereby.

94. The Defendant Medical School has failed to satisfy their contractual agreement with Plaintiff, whether it be in their written contract or oral agreement, or both, in the manner and particulars noted above.

95. The failure of the Defendant Medical School to satisfy their contractual agreement with Plaintiff, whether it be in their written contract or oral agreement, or both, has caused him significant injury.  Plaintiff's dismissal from the Medical School has ruined his academic career, good name, reputation, integrity and honor.  It leaves him further with a substantial student debt, which will be impossible to pay back without a professional degree, the degree he sought in the first instance.

96. As such, and pursuant to Section 1981 the Defendant Medical School is liable to Plaintiff for his damages.

97. Pursuant to Section 1981 Plaintiff is entitled to an award of his attorney fees and costs incurred in bringing this action.

## XIII.   FIFTH CAUSE OF ACTION-
## NEGLIGENCE OF DOCTOR MICHAEL BROWN, M.D.

### A.  MEDICAL NEGLIGENCE

98. Plaintiff alleges that the Defendant Michael Brown, M.D., violated the duty of care he owed to Plaintiff to exercise that degree of care, skill, supervision, and diligence ordinarily possessed and used by other medical professionals under the same or similar circumstances.

99. Plaintiff alleges that such failures were a violation of the relevant professional standards for a reasonable and prudent medical professional in the Bryan- College Station, Texas area.

### B.  COMMON LAW NEGLIGENCE

100. Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

101. Plaintiff contends that in addition to, and in the alternative to the foregoing, the Defendant was generally negligent under the common law, in the above referenced respects and particulars.

### C.  GROSS NEGLIGENCE

102. Plaintiff would show that the acts or omissions of Defendant complained of above constituted gross negligence.  These acts were representative of conscious indifference to the welfare of Plaintiff, and as such, he seeks recovery of exemplary damages against this Defendant, by way of example and of punishment in order to discourage future misconduct by those similarly situated to Defendant.

## XIV.   SIXTH CAUSE OF ACTION INJUNCTIVE RELIEF

103. Plaintiff repeats and incorporates all the allegations of this Complaint, as if fully set forth herein.

104. The Defendant Texas A&M continued actions violate the United States Constitution and the ADA provisions and other federal law mentioned herein.

105. The Defendants continued actions against the Plaintiff is causing substantial, immediate and continuing damages.

106. Plaintiff will suffer irreparable harm if the Defendant is allowed to continue its present course of action.
107. There is no adequate remedy at law.
108. Plaintiff has exhausted all administrative remedies or in addition and in the alternative it would be futile to require further exhaustion in this cause .

## XV.    DAMAGES

109. Plaintiff is entitled to damages in excess of the jurisdictional limits of this court to compensate Plaintiff for:

a. Reimbursement for additional tuition, costs and fees at another medical school if he has to enroll therein.
b. Damages in an amount exceeding the jurisdictional limits of this court for discriminating and denying re-admission to plaintiff under the Americans with Disabilities Act.
c. Lifetime economic damages caused by the necessity to transfer to an institution of lesser prestige.
d. Economic damages caused by the defendant's refusal to re-admit Plaintiff, casing him to incur re-admission fees and tuition fees incurred for one semester at Case Western Reserve University for Masters in Anesthesiology
e. Damages in an amount exceeding the jurisdiction of this court for irreparable damage caused to the plaintiff's career chances whereas he his forever labelled by the National Board of Medical Examiners [NBME] with an irregular behavior.
f. Damages in an amount exceeding the jurisdiction of this court for damage to Plaintiff's reputation as a result of being stigmatized as having mental illness.
g. Damages for violations of Plaintiff's constitutional rights in an amount exceeding one million dollars ($1,000,000) dollars.
h. Damages for violations of state and federal laws and regulations.
i. Punitive damages in an amount sufficient to punish the various Individual Defendants for its illegal and unconstitutional behaviors and actions and discourage it from acting in a like manner in the future.

j.  Recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, together with pre- and post-judgment interest, and court costs expended herein

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in the manner and particulars noted above; and

- in an amount sufficient to fully compensate Plaintiff for the elements of damages enumerated above, and judgment for damages;
- Declaratory judgment finding that Plaintiff's rights have been denied in violation of federal law;
- Compensatory damages incurred in the past, present and future;
- Punitive damages;
- A finding that the conduct of TAMU has been in violation of federal law on all relevant causes of action.
- An injunction restoring Plaintiff as a third year medical student and prohibiting further disciplinary proceedings in a manner that violates the United States Constitution or the ADA;
- And for such other relief as this Court deems just and proper whether it be in law or and in equity, or in both.

Respectfully submitted,

/S/ MARTIN J. CIRKIEL
**Martin J. Cirkiel**
Cirkiel & Asosociates PC
1901 E. Palm Valley Blvd
Round Rock, Texas 78664
State Bar Number: 00783829
SD. Fed I.D Number  21488
marty@cirkiellaw.com (Email)


/S/ DONALD G. HENLSEE

*Danyal Shaikh, Plaintiff's First Amended Complaint* 15

**Donald G. Henslee**
Attorney at Law
Law Offices of Donald G. Henslee
901 Mopac Expressway South
Barton Oaks Plaza One Suite 300
Austin, Texas 78746
State Bar Number 09488500
(512) 320-9177 [Telephone]
(512) 597-1455 [Facsimile]
dhenslee@school-law.co [Email]


/s/ CHIGOZIE F. ODEDIRAN
**Chigozie F. Odediran(Ms.)**
Attorney at Law
Law Offices of Donald G. Henslee
901 Mopac Expressway South
Barton Oaks Plaza One Suite 300
Austin, Texas 78746
State Bar Number 24098196
(512) 320-9177 [Telephone]
(512) 597-1455 [Facsimile]
codediran@school-law.co [Email]

**ATTORNEYS FOR PLAINTIFF**