**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DANYAL SHAIKH** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **NO. 4:16-CV-00591-H** |
| | § | |
| **TEXAS A&M UNIVERSITY** | § | |
| **COLLEGE OF MEDICINE,** | § | |
| **MICHAEL K. YOUNG** | § | |
| **(in his official capacity)** | § | |
| **PAUL OGDEN M.D  AND** | § | |
| **MICHAEL L. BROWN M.D** | § | |
| **(Individually)** | § | |
| | § | |
| **Defendants** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION TO DISMISS**

/S/ MARTIN J. CIRKIEL

Martin J. Cirkiel
Cirkiel & Associates PC
1901 E. Palm Valley Blvd
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
State Bar Number: 00783829
SD. Fed I.D Number  21488
marty@cirkielaw.com (Email)

Donald G. Henslee
Attorney at Law
Law Offices of Donald G. Henslee
901 Mopac Expressway South
Barton Oaks Plaza One Suite 300
Austin, Texas 78746
State Bar Number 09488500
(512) 320-9177 [Telephone]
(512) 597-1455 [Facsimile]
dhenslee@school-law.co [Email]

Chigozie F. Odediran(Ms.)
Attorney at Law

Law Offices of Donald G. Henslee
901 Mopac Expressway South
Barton Oaks Plaza One Suite 300
Austin, Texas 78746
State Bar Number 24098196
(512) 320-9177 [Telephone]
(512) 597-1455 [Facsimile]
codediran@school-law.co [Email]
ATTORNEYS FOR PLAINTIFF

**TABLE OF CONTENTS**

I.      TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

II.     TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

III.    BRIEF INTRODUCTION TO THE CASE AND RESPONSE . . . . . . . . . . . . . . 1

IV.     STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.      FACTUAL RESUME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.     ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

A.      PLAINTIFF'S CLAIM BASED UPON THE AMERICANS WITH DISABILITIES
        ACT IS VIABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B.      PLAINTIFF'S CLAIM BASED UPON VIOLATIONS OF SECTION 504 OF THE
        REHABILITATION ACT IS VIABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C.      PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF IS VIABLE. . . . . . . . . . . 18

VII.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VIII.   PRAYER FOR RELIEF.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IX.     CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TABLE OF AUTHORITIES

Federal Cases

Supreme Court Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). . . . . . . . . . . . . . . . . . . . . . . .

Board of Curators, University of Mo. V. Horowitz, 435 U.S. 78 (1978) . . . . . . . . . . . . . 14

Cleveland. Board Of Education v. Loudermill, 470 U.S. 532, 538, n. #3, 542 (1985) .. . 14

Conley v. Gibson, 355 U.S. 41, 47 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 5

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Regents of University of Michigan v. Ewing, 474 U.S. 214 (1985) . . . . . . . . . . . . . . . . 14

Tennessee v. Lane, 541 U.S. 509, 533-534 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

United States v. Georgia, 546 U.S. 151, 159 (2006) .. . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Courts Of Appeal

Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bell v. Ohio State University, 351 F.3d 240, 251 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . 14

Bennett-Nelson v. Louisiana Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005) . . . . . . 18

Brennan v. Stewart, 834 F.2d 1248, 1259 (5th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . 16

Delano-Pyle v. Victoria County, Texas, 302 F.3d 567(5th Cir. 2002) . . . . . . . . . . . . . . 17

General Star Indemnity Company v. Vesta Fire Insurance Corporation, 173 F.3d 946, 950 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hale v. King, 624 F.3rd 178 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Home Builder's Association v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) . . 3

Lowrey v. Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997) . . . . . . . 3

Martinson v. Regents of University Of Michigan, 2014 WL 134476 at *9 (6th Cir., April 4, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1074 (11th Cir. 1996) . . . . . . . . . 18

Rizzo v. Children's World Learning Centers, Inc., 173 F.3d 254, 261 (5th Cir.1999) . . . 16

Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 3

Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana, 252 F.3d 781, 786 (5th Cir.), cert. denied, 534 U.S. 995 (2001) . . . . . . . . . . . . . . . . . . . . . . . 3

Thompson v. Goetzmann, 337 F.3d 489, 495 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 3

Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1396 (3rd Cir. 1991) . . 14, 15

United States ex rel. Adrian v. Regents of University of California, 363 F.3d 398, 403 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Woodfield v. Bowman, 193 F.3d 354, 362 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 5

District Courts

Borninski v. Williamson, No. 3:02 CV 1014 L, 2002 U.S. Dist. LEXIS 22346, at *4 (N.D. Tex. Nov. 18, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Furstenfeld, 2002 U.S. Dist. LEXIS 11823, at *5  (N.D. Tex.  Jul. 1, 2002). . . . . . . . . . 4

In re Elec. Data Sys. Corp. "ERISA" Litigation, 305 F. Supp. 2d 658, 675 (E.D. Tex.  2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

New York State Asso. for Retarded Children, Inc. v. Carey, 466 F. Supp. 487, 504 (E.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Mills v. Board of Ed. of District of Columbia, 348 F. Supp. 866 (D.C. 1972) . . . . . . . . 13

Ramming v. U.S., 281 F.3d 158 (5th Cir. 2001) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Robertson v. Granite City Community Unit School Dist. No. 9, 684 F. Supp. 1002 (S.D. Ill.

1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Shurb v. University of Texas Health Sciences at Houston-School of Medicine, 63 F. Supp. 3rd 700, fn. #8 (S.D. Tex., Oct. 24. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

Thomas v. Atascadero Unified School Dist., 662 F. Supp. 376 (C.D. Cal. 1986) . . . . . . 13

Federal Law/Rules

29 U.S.C §794 (Section 504 of the Rehabilitation Act of 1973) . . . 1, 2, 15, 16, 17, 18, 19

42 U.S.C. §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. §12101 et seq. (Americans With Disabilities Act) . . . . . . . . . 1, 2, 12, 13, 16, 18

42 U.S.C. §12131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

42 U.S.C. §12202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Federal Rules of Civil Procedure 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rules of Civil Procedure 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rules of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DANYAL SHAIKH** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **NO. 4:16-CV-00591-H** |
| | § | |
| **TEXAS A&M UNIVERSITY** | § | |
| **COLLEGE OF MEDICINE,** | § | |
| **MICHAEL K. YOUNG** | § | |
| **(in his official capacity)** | § | |
| **PAUL OGDEN M.D  AND** | § | |
| **MICHAEL L. BROWN M.D** | § | |
| **(Individually)** | § | |
| **Defendants** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES DANYAL SHAIKH, Plaintiff, and files this his *Response To Defendant's Motion To Dismiss* (DE# 5) and Supplement (DE# 35), and in support thereof would respectfully show as follows:

**I. BRIEF INTRODUCTION TO THE CASE AND RESPONSE**

1. Danyal Shaikh filed his *Original Complaint* (DE#1) alleging that the Texas A&M Medical School violated his various constitutional and civil rights in a number of manners and particulars (as more specifically enunciated below), as to the *Americans With Disabilities Act,* 42 U.S.C. §12101 et seq. ("ADA"); *Section 504 of the Rehabilitation Act of 1973*, 29 U.S.C. §794 ("Rehabilitation Act") and the United States Constitution.

2. The Defendant filed a *Motion To Dismiss* (DE#5) arguing that certain of Plaintiff's

claims against the University, and pursuant to the ADA and under Section 1983 are barred by sovereign immunity pursuant to Fed. R. Civ. P. 12(b)(1).  In addition, and also pursuant to R. 12(b)(6), they have alleged that Plaintiff has failed to state a viable Section 504 claim, a viable claim related to reputation and a viable claim for injunctive relief.  Further, that any and all claims against Michael Young need be dismissed, as he is purportedly entitled to qualified immunity.[1]  Plaintiff sought leave of court to file an amended complaint which was granted (DE# 21).  On or about June 6, 2016 there was a hearing with the Court and the Defendant was directed to file a supplementary motion, regarding any new claims alleged in Plaintiff's Amended Complaint.  Defendant did so (DE# 35). Plaintiff responds accordingly.

## II.  STANDARD OF REVIEW

A.    STANDARD FOR 12(b)(1)

3.    As the Defendant notes, Federal Rule of Civil Procedure 12(b)(1) authorizes a federal court to dismiss a case for lack of subject-matter jurisdiction, if a court lacks constitutional or statutory duty to adjudicate the case. Home Builder's Association v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).  In examining a Rule 12(b)(1) motion to dismiss, the court may consider matters of fact that may be in dispute. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the Plaintiff cannot prove any set of facts in support of his claim that would entitle a Plaintiff to relief.  Ramming v. U.S., 281 F.3d 158 (5th Cir. 2001).  Plaintiff will provide support below that this Court has

---

[1].  Defendant also argued that Plaintiff's claims related to the Texas Tort Claims Act and other state or common law claims, need be dismissed.  Plaintiff agrees and has abandoned those claims in his *First Amended Complaint*.

jurisdiction over the claims, at this stage of the pleadings, as delineated in his *First Amended Complaint*.

B.    STANDARD FOR 12(b)

4.    A motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of its claims that would entitle it to relief.  Conley v. Gibson, 355 U.S. 41, 45 46, (1957); Thompson v. Goetzmann, 337 F.3d 489, 495 (5th Cir. 2003); Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000).  The complaint must be liberally construed in favor of the plaintiff and the allegations contained therein must be taken as true.  Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).

5.    Whether a claimant will ultimately be able to adduce evidence sufficient to support its claims on the merits is not a question for consideration in connection with the 12(b)(6) motion.  General Star Indem. Co. v. Vesta Fire Ins. Corp., 173 F.3d 946, 951 (5th Cir. 1999).  Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.  Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana, 252 F.3d 781, 786 (5th Cir.), *cert. denied*, 534 U.S. 995 (2001); Lowrey v. Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997).

6.    It is well-settled that liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to define disputed facts and issues and to dispose of un-meritorious claims.  Furstenfeld v. Rogers, No. 3 02 CV 0357 L, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex.  Jul. 1, 2002).  Further, in the event a claimant

has failed to adequately state a claim upon which relief can be granted, before the motion is granted, the plaintiff should be given the opportunity to replead. Borninski v. Williamson, No. 3:02 CV 1014 L, 2002 U.S. Dist. LEXIS 22346, at *4 (N.D. Tex. Nov. 18, 2002) [holds that dismissal is warranted only if, after having been given the opportunity to amend, plaintiff still fails to state a claim]; see also United States ex rel. Adrian v. Regents of University of California, 363 F.3d 398, 403 (5th Cir. 2004) [citing Federal Rule of Civil Procedure 15(a) this court holds that leave to amend should be freely given]; Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) [notes that the Fifth Circuit supports the premise that "granting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim"].

7.      Furthermore, the exacting standards governing Rule 12(b)(6) motions must be considered in light of the liberal pleading requirements of Rule 8(a). Furstenfeld, 2002 U.S. Dist. LEXIS 11823, at *5.  Federal Rule of Civil Procedure 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a).  A complaint will be deemed inadequate under Rule 8(a) only if it fails to: (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist.  General Star Indemnity Company v. Vesta Fire Insurance Corporation, 173 F.3d 946, 950 (5th Cir. 1999).

8.      Except in a limited set of cases a plaintiff is not required to plead facts supporting each and every element of his claim or legal theory.  Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  Rather, a complaint is sufficient if it "give[s] the defendant fair

notice of what the plaintiff's claim[s] [are] and the grounds upon which [they] rest." Id., *quoting* Conley v. Gibson, 355 U.S. 41, 47 (1957).  A pleading may give proper "fair notice" even where only the title of the theory is pled.  In re Elec. Data Sys. Corp. "ERISA" Litigation, 305 F. Supp. 2d 658, 675 (E.D. Tex.  2004); *citing* Woodfield v. Bowman, 193 F.3d 354, 362 (5th Cir. 1999).

9.     As will be more fully described below, Plaintiff will provide support that he stated claims that need not be dismissed, at this juncture of the proceedings, pursuant to Rule 12(b)(6). Of course, if the Court believes otherwise, Plaintiff requests leave of court to file a *Second Amended Complaint*.

### III.  FACTUAL RESUME

10.    Plaintiff graduated Texas A&M University Magna Cum Laude, with a Bachelor's of Science in Psychology and entered their College of Medicine in May 2010 [First Amended Complaint at ¶12-13].[2]  Due to his advanced standing he was actually accepted into the College of Medicine during in December 2009 and for the first few years was very successful. [¶14-15].

11.    In May 2012, Plaintiff began preparations for the United States Medical Licensing Examination (USMLE) Step 1[3] examination. Unfortunately, he began having trouble studying and concentrating and expressed concerns to the Dean of Student Affairs,

---

[2].  As Plaintiff will be solely relying upon his *First Amended Complaint* (DE# 21) in his *Response*, hereinafter he will only use the paragraph number.

[3].  "The United States Medical Licensing Examination (USMLE) [Step 1], evaluates the applicant's knowledge and understanding of key concepts of basic biomedical science, with an emphasis on principles and mechanisms of health, disease, and modes of therapy". *Texas A&M Health Science Center College of Medicine, Student Handbook for College of Medicine Student revised 2014*. [§16, fn. #1]

Dr. Gary McCord, M.D., at the Medical School. [¶16-17]. Plaintiff shared them with Dr. McCord in September, who suggested, among other things, that Plaintiff utilize the six (6) free mental and behavioral visits otherwise available to all medical students enrolled at TAMU. Notwithstanding how poorly he felt, Plaintiff took the USMLE Step 1 on the 29th of November 2012 but, as should be no surprise, did not pass. In late January of 2013 McCord, recognizing Plaintiff's disabling condition, suggested he take a one year *Leave of Absence* (LOA) in order to give him time to study and re-take the exam.  Professorial and administrative staff at the college were well-aware of Plaintiff's disabling conditions, especially when Plaintiff took advantage of the mental health services afforded to all students, including Dr. Kathleen Fallon M.D., who was the Senior Associate Dean for Student Affairs, at the Medical School and Patrick Ray, PhD and Kathy Roblyer, NP, both affiliated with the Medical School. [¶18-23].

12.    After two un-productive visits, Roblyer referred Plaintiff to a psychiatrist, Dr. Michael Brown, M.D., also a college employee. On February 2013, Plaintiff visited with Dr. Brown, who diagnosed him with Test Phobia, Anxiety and Depression. Dr. Brown continued to treat Plaintiff from February 2013 till December 2013 but during this time, never requested or administered any blood work or tests on him. He did nevertheless, prescribe anti-depressants, as well as anxiety and blood pressure medications without a thorough determination, physical exam or lab work up regarding Plaintiff's symptoms.  Dr. Brown provided treatments not only in his capacity as a staff member of the university, but also in his individual capacity when serving Plaintiff at his private office at the Scott and White Hospital in College

Station. [¶24-26].

13.     During the period including his *Leave of Absence* (LOA), Plaintiff's symptoms worsened notwithstanding his treatments with his the Medical School psychiatrist, Dr. Brown.  These symptoms include but were not limited to increased nervousness, dizziness, severe headaches, nausea, diarrhea, constipation, upset stomach, stomach pain, eye pain, abnormal ejaculation, difficulty having an orgasm, dry mouth, decreased impulse control, irritability, weight gain without a change in diet, increased lethargy, change in sleep patterns, worsened inability to concentrate, lack of motivation, increased anxiety, loss of sexual desire and severe emotional distress. [¶27].

14.     In addition, during this period Plaintiff was pressured by the Student Promotion Committee to retake the USMLE by a specific, yet arbitrarily stated deadline, even though he was given a one-year leave of absence, based upon his disabilities, by another arm of the college. Not surprisingly, these pressures and conflicting directives exacerbated his symptoms. Moreover, because the anti-depressants prescribed by Dr. Brown were actually contraindicated in light of Plaintiff's actual (yet undiagnosed) medical condition his symptoms worsened making it impossible for him to take the USMLE during the prescribed one year *leave of absence* period.[¶28-30].

15.     When LOA period ended in January 2014, the Student Promotion Committee voted to dismiss him notwithstanding the fact everyone knew Plaintiff had a disability and was being treated for a psychiatric condition. Importantly, and prior to the onset of Plaintiff's (then incorrectly) diagnosed mental health problems, he successfully

completed all the required curriculum at the medical school including the 3rd year clinical rotations with honors.  Plaintiff never experienced failure of any classes while at the Texas A&M University, whether in his undergraduate or with the Medical School curriculum. [¶32].

16.   Plaintiff appealed the decision to dismiss him but the Appeal Committee, again failed to consider his disabilities and rather gave him an ultimatum to either withdraw or be dismissed from the Medical School. Plaintiff was led to believe that if he withdrew it gave him the option to be re-admitted into the TAMU or other medical colleges.  In fact, the Dean of Medical School, Dr. Paul Ogden, M.D., urged that he withdraw from the Medical School, also giving Plainiff the distinct impression that in doing so, he would be more readily reinstated to the program. Based upon the representations of a number of school personnel and officials he withdrew from school, even though he had successfully completed three years and only had one remaining. [¶33-35].

17.   After filling for withdrawal, Plaintiff met with Dean of Student Affairs Dr. Gary McCord who informed  Plaintiff that the Dean of Medical School Dr. Paul Ogden was open to the idea of having Plaintiff being readmitted stating:

   "*On a positive note, however, the Dean has indicated to me that if you reapply for admission at some point that he would entertain your being readmitted and having a chance to take the test prior to signing up for any classes. He also is willing to take another look at your reinsertion point into the curriculum.*" [¶36].

18.   After withdrawal, the Student Business Services placed a block on Plaintiff's access to all his academic records, including not only his graduate level medical school records but even the undergraduate school transcripts.  In doing so, this made it

absolutely impossible for him to pursue his medical education elsewhere or to even establish another career path with his undergraduate degree.[¶37].

19.  In any case and in the Fall of 2014, Plaintiff applied to be re-admitted into the Medical School based on the previous representations by college of medicine faculty. During the admission interviews, Plaintiff was told by faculty members Dr. Paul C. Brandt Ph.D, the Vice Chair of Student Promotions Committee and Dr. Rania Cannaday M.D. that he was wanted back at the Medical School and related he had a good chance of being accepted back into the Medical School as a third year student.  Unfortunately, he was denied re-admission into the Medical School. Importantly, even though he had a clearance from his psychiatrist that he was able to participate in the program, the admission committee failed to accommodate his disability, and denied readmission. The refusal was particularly unexpected in light of the representations by Dr. Ogden and others that, with his new application, there was a near guarantee of re-admission. [¶38-40].

20.  Plaintiff met with the Dean of Admission Mr. Maldonado who told him that the reason he was denied re-admission was because "he was not an acceptable applicant and that he was a liability for psychiatric reasons," both recognizing but refusing to accommodate his medical condition.  Plaintiff also met with Dr. Ogden after the denial who advised him to "100% re-apply for admission again for the 2016 entry year cycle." He then re-applied in June of 2015, now with supporting letters from the Dean of College of Medicine, Dr. Ogden and the Dean of Student affairs, Dr. McCord. [¶41-43].

21.  Unfortunately, the psychiatric care provided by Dr. Brown was not helping Plaintiff

so he started to research into his medical condition, suspecting he may have a physical issue affecting him, like a Pituitary Tumor. He asked his then primary care physician to run some tests, blood work and an MRI which confirmed that Plaintiff did indeed have a brain tumor, called a Prolactinoma[4]. It causes an increase in the production of a hormone called prolactin. In plaintiff's case, this caused his testosterone to be very low which caused loss of memory and concentration, depression, anxiety, extreme fatigue and muscle weakness.[5] Dr. Brown should have ordered, but did not, a simple blood test which would have easily detected abnormal hormone levels commensurate with a tumor. If he had, appropriate treatment would have started at the initial time Plaintiff complained to Dr. Brown and he would not have had to endure these years of stress, anxiety and a worsening medical condition, as well as the resultant permanent record of being withdrawn from TAMU College of Medicine.[¶41-47].

22.     Plaintiff then underwent immediate medical protocol which reversed the growth of tumor and progesterone level within four-months. There was no need for surgery. The tumor was also non-cancerous. Plaintiff's treating endocrinologist has noted that Mr. Shaikh's current medication has no side effects and that he was then and continues to be capable of returning to Medical school. Now armed with the knowledge that he did not have a psychiatric illness but a treatable medical condition

---

[4]. A Prolactinoma is a tumor of the pituitary gland producing a hormone called prolactin. Symptoms include too much prolactin in the blood (hyperprolactinemia), or with too much pressure by the tumor on surrounding tissues" Glezer A, Bronstein MD (2015). "Prolactinomas". *Endocrinol Metab Clin North Am.* **1** (44): 71–78.  https://en.wikipedia.org/wiki/PubMed_Identifier.

[5]. Per plaintiff's endocrinologist, Susan L. Samson, MD PhD FRCPC FACE Medical Director Pituitary Center, Associate Professor of Medicine, Baylor College of Medicine, Director of Endocrinology.

and brain tumor, he re-applied for admission to the medical school. Nevertheless, he was again denied admission. Again, there was no apparent consideration for his then disabling physical condition. [¶48-49].

23. Prior to the second application process, and while no longer a student at the school, Plaintiff was advised by the Dean of Admissions, Mr. Filo Maldonado to strengthen his application by re-taking the USMLE Step 1. He was also advised to engage in other endeavors to demonstrate retention of sufficient clinical and medical knowledge. Unfortunately the advice was incorrect in that such exams are only to be taken by students currently enrolled in a medical program. When Plaintiff enrolled to sit for the USMLE, the National Board of Medical Examiners (NBME) sanctioned him with having irregular behavior, purportedly for signing up a test when not enrolled in a medical program, as required. Now Plaintiff forever has this imprimatur of "irregular behavior" attached to any certificate the NBME may provide in the future. [¶50-52].

24. Mr. Maldonado, the Dean of Admissions Mr. Maldonado, directed Plaintiff to enroll in a Masters of Anesthesiology program in Case Western Reserve University so that his re-application could be strengthened. Despite all the efforts put in by Plaintiff to self- diagnose himself, take the USMLE, enroll in a Masters of Anesthesiology program, as directed by TAMU staff, Plaintiff was denied reinstatement into the college of medicine, twice. Plaintiff has never been given a valid reason for TAMU's refusal to re-admit him. [¶53-55].

## IV. <u>ARGUMENT AND AUTHORITIES</u>

25. Plaintiff incorporates by reference all of the above related paragraphs with the same

force and affect as if herein set forth, and likewise each section below incorporates the paragraphs and sections above it.

A.    PLAINTIFF'S CLAIM BASED UPON THE AMERICANS WITH DISABILITIES ACT IS VIABLE

26.    Plaintiff has alleged his rights pursuant to the *Americans With Disabilities Act* were violated during the educational and grading process; the setting of deadlines, the testing process, the dismissal from medical school, the appeal of the dismissal, in regard to the leave of absence and as to the re-admission process.  (DE# 21, ¶18, 19, 20, 27, 28, 31, 33-43, 49-55, 60-69).

1.    Immunity Is Not Waived Only When Fundamental Rights Are Involved

27.    Texas A&M argues that Plaintiff's claim pursuant to the *Americans With Disabilities Act* is barred by sovereign immunity (DE# 5, p. 4 at II).   They do not argue that the State of Texas does not have to follow the ADA at all but rather that it is limited to situations  where the Complainant's fundamental rights are in contest, relying upon Tennessee v. Lane, 541 U.S. 509, 533-534 (2004) and United States v. Georgia, 546 U.S. 151, 159 (2006) for this contention.

28.    First and foremost, Plaintiff notes that Defendant's position in this cause, notwithstanding U.S. v. Georgia, actually conflicts with the findings of the Supreme Court in Lane, and its analysis of the issue of waiver of sovereign immunity, where it addressed based upon disability in an educational context.[6]

---

[6].  In fact in Lane at fn. #12 the Supreme Court that educational issues were definitely contemplated by the ADA and applicable to the state; *see e.g.*, New York State Asso. for Retarded Children, Inc. v. Carey, 466 F. Supp. 487, 504 (EDNY 1979) [segregation of mentally retarded students with hepatitis B]; Mills v. Board of Ed. of District of Columbia, 348 F. Supp. 866 (DC 1972) [exclusion of mentally retarded students from public school system]; Robertson v. Granite City Community Unit School Dist. No. 9, 684 F. Supp. 1002 (SD Ill. 1988) [elementary-school student with AIDS excluded from attending regular education

29.     Moreover, Plaintiff's position also finds support in the "plain language" of the statute at 42 U.S.C. §12131 [Definitions](1)(A) which specifically notes that the ADA applies to a state  government and that 11th Amendment Immunity is waived. 42 U.S.C. §12202.  In addition, Defendant's position also specifically conflicts with the language at 42 U.S.C. §12101[*Findings And Purpose*](a)(3) which states that:

> "discrimination against individuals with disabilities persist in such critical areas as employment, housing, public accommodations, *education*, transportation, communication, recreation, institutionalization, health services, voting and access to public services;" ....

> *See also* <u>Lane</u> at 525. There is no distinction in the ADA regarding which rights for a disabled person are protected and permit a private cause of action and a suit for damages, and where it does not.   In fact, a review of the entire decision in <u>Lane</u> supports the majority position that immunity is waived for educational issues as well as those related to voting.

30.     Further, and in any case, Defendant's argument and reliance upon the <u>Georgia</u> case, was recently rejected outright in <u>Shurb v. University of Texas Health Sciences at Houston-School of Medicine</u>, 63 F. Supp. 3rd 700, fn. #8 (S.D. Tex., Oct. 24. 2014) by the Honorable Judge Hoyt.

31.     As such, Defendant's *Motion* as to this issue should be denied.

> 2.     When Texas A&M Violated Plaintiffs Rights Under The ADA They Also Violated His Rights Under The Constitution

32.     Nevertheless, even if this Court finds Defendant's reliance upon <u>United States v. Georgia</u> and by extension, their reliance upon <u>Hale v. King</u>, 624 F.3rd 178 (5th Cir.

---

classes or participating in extracurricular activities]; <u>Thomas v. Atascadero Unified School Dist.</u>, 662 F. Supp. 376 (CD Cal. 1986) [kindergarten student with AIDS excluded from class].

2010)[7] is well-founded, Plaintiff can first show that his constitutional rights have been violated by Defendant, as they argue he must.

33.     It is well-settled that Shaikh has a constitutionally protected interest in life, liberty and property (and reputation). <u>Cleveland. Board Of Education</u>, 470 U.S. 532, 538, n. #3, 542 (1985). He has noted such interests in his *Amended Complaint* (DE# 21, ¶82, ¶95) and argues that he has cognizable constitutionally protected property right in his education. *See* <u>Regents of University of Michigan v. Ewing</u>, 474 U.S. 214 (1985); *see also* <u>Board of Curators, University of Mo. V. Horowitz</u>, 435 U.S. 78 (1978). As such, Defendant's *Motion* as to this issue should be denied.[8]

34.     The Texas A&M Defendant further argues that a liberty interest can exist only where the complainant experiences some "stigma or some foreclosure of the ability to take advantage of other educational opportunities" (DE# 5, p. 9) *citing* <u>Unger v. Nat'l Residents Matching Program</u>, 928 F.2d 1392, 1396 (3rd Cir. 1991), for this proposition. Shaikh notes that the "TAMU Student Business Services placed a block on Plaintiff's access to his academic records (undergraduate and graduate transcripts), completely disabling him from further pursuit of his education elsewhere or to establish another career path with his undergraduate degree." (DE# 21, ¶37). In addition, because of the acts and omissions of this Defendant, the

---

[7]. The Defendant has not provided the Court the full citation on this case. It was later reheard in *en banc*, and remanded by to the District Court so the Appellant could amend his complaint. *See* 642 F.3d 492 [2011 U.S. App. LEXIS 10642] (5th Cir. Miss., May 26, 2011).

[8]. Moreover, Plaintiff's constitutionally protected interest is even more pronounced, as it is in this cause, when its coupled with a claim related to "equal protection," <u>Martinson v. Regents of University Of Michigan</u>, 2014 WL 134476 at *9 (6th Cir., April 4, 2014), *citing* <u>Bell v. Ohio State University</u>, 351 F.3d 240, 251 (6th Cir. 2003) as Plaintiff has pled in this cause.

*National Board of Medical Examiners* (NBME) sanctioned him with irregular behavior, which will forever be attached to a NBME certificate. (DE# 21, ¶52). Moreover he is significantly damaged as he has debt based upon attempting to get a medical degree but without such medical degree is not capable of paying it back. (DE# 21, ¶95). Shaikh easily satisfies the criteria set forth in Unger as he shown both a stigma that is ongoing, is in significant debt and is foreclosed from continuing in a similar career path. Defendant's *Motion* as to this issue should be denied.

35.     In addition, the Texas A&M Defendant further argues, and also pursuant to Hale, that Plaintiff needs to show the acts and omissions of the University violate the Fourteenth Amendment both substantively and procedurally in that he was he was given arbitrary deadlines (DE# 21, ¶27), was dismissed from the school even though his grades were high (DE# 21, ¶32), was given incorrect information about the readmission process (DE# 21, ¶35) and testing process (DE# 21, ¶51-52) and had his transcripts blocked (DE# 21, ¶37).

36.     In addition and in the alternative Shaikh has provided factual support, at this stage of the litigation, that the acts and omissions of Defendant create a viable *class of one* cause of action, pursuant to the 14th Amendment to the United States Constitution regarding the manner in which grades were affixed, his dismissal and the re-application to the program (DE# 21, ¶81-82, 86).

37.     For any and reasons noted above, Defendant's argument regarding sovereign immunity fails, at least at this stage of the litigation.

B.      PLAINTIFF'S CLAIM BASED UPON VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT IS VIABLE

38.    In addition and in the alternative to the above, Plaintiff has alleged that the acts and omissions of the Texas A&M Defendant likewise violates Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794. The ADA is a federal anti-discrimination statute designed "[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Rizzo v. Children's World Learning Centers, Inc., 173 F.3d 254, 261 (5th Cir.1999). The Rehabilitation Act was enacted "to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others." Brennan v. Stewart, 834 F.2d 1248, 1259 (5th Cir.1988).   The language in the ADA generally tracks the language set forth in the Rehabilitation Act.   In fact, the ADA expressly provides that "[t]he remedies, procedures and rights" available under the Rehab Act are also accessible under the ADA. 42 U.S.C. § 12133 (1995).   Thus, "[j]urisprudence interpreting either section is applicable to both." Hainze v. Richards, 207 F.3d 795, 799 (5th Cir.2000).

39.    In their *Motion* (DE# 5, p. 16) the Defendant mistakenly states that Shaikh's only 504 Claim is based upon the failure to be re-admitted into the medial program at the school.   That is not correct, Shaikh has alleged he was a victim of discrimination based upon disability not only in regard to readmission to the program but in a number of other manners and particulars (DE# 21, ¶56-67) including regarding his inability to remain the medical program (DE# 21, ¶76), which includes the grading process, appeal and dismissal processes. (DE# 21, ¶65).[9]

---

[9].   If the Court determines that the Texas A&M Defendant's argument that Shaikh does not have a viable Section 504 claim, Plaintiff notes that could only extend to the readmission process and not any other.

40.   To have a viable claim under the Rehabilitation Act a person (1) must have a disability; (2) must otherwise be qualified; (3) be denied the benefit of services, programs or activities by a public entity (receiving federal funding) and this exclusion, denial of benefits is by reason of the person's disability. <u>Delano-Pyle v. Victoria County</u>, 302 F.3d 567, 575 (5th Cir. 2002).

41.   For the purposes of satisfying the threshold requirements of a Section 504 claim, Shaikh notes it is apparently uncontroverted that he had a medical or mental disability or both during the period in question.  It is likewise apparently uncontroverted that Plaintiff is otherwise qualified to both remain in, and in addition, be readmitted to, the medical school.  Further, it also uncontroverted that the medical school receives federal funding and that it denied Plaintiff the benefit of their services, programs or activities due to Plaintiff's disabilities.

42.   What the Texas A&M Defendant does allege is that Shaikh must show not only was he a victim of discrimination based upon disability, but it must be the "sole" reason for the purported discrimination.  Further, and because there may be more than one reason why Shaikh was not readmitted to the medical school (DE# 5, p. 16) for instance, "that he was not an acceptable applicant and that he was a liability for psychiatric reasons" (DE# 21, ¶41) then he does not satisfy the language in the Rehabilitation Statute, that requires the discrimination be "solely" based upon disability.

43.   They rely upon <u>Shurb</u> for the contention that Shaikh must show, especially at this juncture of the proceedings, that the reason he was not readmitted to the medical school was "solely" because of his disability.  This reliance is misplaced as this is

not exactly what Judge Hoyt wrote or even implied in that case (*see* fn. # 6-8).   In

fact, the Judge failed to see any distinction between a claim related to Section 504

and the ADA, which is controlling caselaw in this District and in the 5th Circuit,

*citing* Bennett-Nelson v. Louisiana Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005)

for the proposition that claims for both are reviewed under the same standard.  In fact

Bennett notes there could probably never be a difference between ADA and

Rehabilitation Act analysis because both impose upon public entities an affirmative

obligation to make reasonable accommodations for disabled individuals. Further,

"where a defendant fails to meet this affirmative obligation, the cause of that failure

is, whether solely or not solely, irrelevant."

44.   While it was noted in an employment related case, the following wise commentary

by the Judge in McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1074 (11th Cir.

1996) is worth noting:

> "A standard that imposes liability only when an employee's disability is the
> sole basis for the decision necessarily tolerates discrimination against
> individuals with disabilities so long as the employer's decision was based—if
> ever so slightly—on at least one other factor.  A liability standard that
> tolerates decisions that would not have been made in the absence of
> discrimination, but were nonetheless influenced by at least one other factor,
> does little to "eliminate" discrimination; instead it indulges it."

45.   The Texas A&M Defendant's argument that Plaintiff's Section 504 claim (and his

surviving claims based upon the *Americans With Disabilities Act*) should be denied

at this time.

C.   PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF IS VIABLE

46.   The Defendant does not argue that Plaintiff's request for injunctive relief is

incorrect,[10] rather that is somehow not written in his complaint in the correct manner. They provide absolutely no Texas Federal District Court or Fifth Circuit caselaw in support of this contention.  It should be rejected accordingly.  Alternatively, if the Court finds that the Defendant has good cause for this contention, Plaintiff requests permission and leave of court to amend or supplement his first amended complaint accordingly.

## V.  <u>CONCLUSION</u>

47.     Plaintiff has provided significant factual support for his contention that this Court has jurisdiction over his claims related to the *Americans With Disabilities Act*.  He has also provided significant factual support for his contention that he has a viable claim pursuant to Section 504 of the Rehabilitation Act of 1973.   Further, that his claim for equitable relief is well-founded.

48.     If the Defendant's position that this Court has no jurisdiction over Plaintiff's claim related to the *Americans With Disabilities Act*.  Further, it is their position that Plaintiff can essentially never show that the way he was mistreated by the Defendant "solely" because of disability, thus foreclosing him from ever having a viable claim related to Section 504 of the Rehabilitation Act of 1973.  If so, this Plaintiff as well as just about every other person who works for the State of Texas, is left without any remedy in such instances. Surely, Congress could not have intended that the State of Texas can violate both statutes with impunity. Their *Motion* should be denied.

---

[10].  Here again the <u>Shurb</u> case is helpful where Judge Hoyt rejected the State's contention that a request for injunctive relief against the medical school also failed to state a claim.

## VI.  PRAYER FOR RELIEF

THEREFORE, Plaintiff prays that Defendant's *Motion To Dismiss*, be denied in total or in part, and in addition and in the alternative, he be permitted to replead, and for such other relief as this Court deems just and proper whether it be in law or and in equity, or in both.

Respectfully submitted,

/S/ MARTIN J. CIRKIEL
Martin J. Cirkiel
Cirkiel & Asosociates PC
1901 E. Palm Valley Blvd
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
State Bar Number: 00783829
SD. Fed I.D Number  21488
marty@cirkielaw.com (Email)

Donald G. Henslee
Attorney at Law
Law Offices of Donald G. Henslee
901 Mopac Expressway South
Barton Oaks Plaza One Suite 300
Austin, Texas 78746
State Bar Number 09488500
(512) 320-9177 [Telephone]
(512) 597-1455 [Facsimile]
dhenslee@school-law.co [Email]

Chigozie F. Odediran(Ms.)
Attorney at Law
Law Offices of Donald G. Henslee
901 Mopac Expressway South
Barton Oaks Plaza One Suite 300
Austin, Texas 78746
State Bar Number 24098196
(512) 320-9177 [Telephone]
(512) 597-1455 [Facsimile]
codediran@school-law.co [Email]
ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded to the following parties on this 24th day of June, 2016 by Notice of Electronic Filing from the Clerk of the Court.

ERIC A. HUDSON
Assistant Attorneys General
Attorney-in-Charge
Texas Bar No. 24059977
Southern District ID No. 1000759
Office of the Attorney General - 019
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-4058 [Telephone]
(512) 320-0667 [Facsimile]
eric.hudson@texasattorneygeneral.gov [Email]
**Attorneys for Defendants**

*/s/ Martin J. Cirkiel*
Martin J. Cirkiel