IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **DANYAL SHAIKH** § | |
|     **Plaintiff** § | |
| **v.** § | |
| § | **NO. 4:16-CV-00591-H** |
| **TEXAS A&M UNIVERSITY** § | |
| **COLLEGE OF MEDICINE,** § | |
| **MICHAEL K. YOUNG (Officially),** § | |
| **PAUL OGDEN M.D AND** § | |
| **MICHAEL L. BROWN M.D** § | |
| **(Individually)** § | |
|     **Defendants** § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT BROWN'S MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES DANYAL SHAIKH, Plaintiff, and files this his *Response To Defendant Brown's Motion To Dismiss* (DE# 43) and in support thereof would respectfully show as follows:

## I. BRIEF INTRODUCTION TO THE CASE AND RESPONSE

1. Shaikh filed his *Original Complaint* (DE#1) alleging Texas A&M Medical School violated the *Americans With Disabilities Act,* 42 U.S.C. §12101 et seq. ("ADA"); *Section 504 of the Rehabilitation Act of 1973*, 29 U.S.C. §794 ("Rehabilitation Act") and the United States Constitution as well some common law claims.

2. The Defendant filed a *Motion To Dismiss* (DE#5) arguing that Plaintiff's claims against the University, were by sovereign immunity pursuant to Fed. R. Civ. P. 12(b)(1). In addition, and to R. 12(b)(6) Plaintiff had failed to state viable claims as to Section 504, the common law claim related to reputation and for injunctive relief. Further, that any and all claims against Michael Young be dismissed, as he

purportedly is entitled to qualified immunity. Plaintiff sought leave of court to file an amended complaint which was granted. In is *First Amended Complaint* (DE# 21), among other things, added a cause of action against Dr. Michael L. Brown, M.D. On July 22, 2016, Dr. Brown filed his *Motion To Dismiss* (DE# 43). Plaintiff responds accordingly.

## II. STANDARD OF REVIEW

3. Plaintiff incorporates by reference his response as to the appropriate *Standard Of Review* for as noted in his *Response To Defendant's Motion To Dismiss* (DE# 37) relative to a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6).

4. Brown has suggested that a *Motion To Dismiss* is the appropriate mechanism to address the affirmative defense of limitations, *citing* Abecassis v. Wyatt, 785 F. Supp. 2d 614, 651 (S.D. Tex. 2011). Plaintiff disagrees and notes that in Texas, a claim regarding limitations is an affirmative defense, pursuant to Tex. R. Civ. P. 94, with the burden on the Movant. Quantum Che, Corp. v. Toennies, 47 S.W.3d 473, 481 (Tex. 2001). It must be brought, pursuant to Tex. R. Civ. P. 166a and in general, only when there has been adequate time for discovery. There has not been any discovery in this case.

5. In fact, the Menzoza v. Murphy, 532 F.3d 342 (5th Cir. 2008) case, upon which Dr. Brown substantially relies, was addressed at the District Court level with a *Motion For Summary Judgment,* which supports Shaikh's position that Brown's 12(b)(6) motion is premature. In fact, it is well-settled that liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to define disputed facts and issues and to dispose of un-meritorious claims. Furstenfeld v.

Rogers, No. 3 02 CV 0357 L, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002), especially if the claim is a fact-based consideration based upon limitations.

## IV. FACTUAL RESUME

6. Plaintiff incorporates by reference as if full set forth herein his *Second Amended Complaint* (DE# 29). As such, he will hereinafter only include those facts related to the portion of this cause related to Dr. Brown.

7. In late January of 2013 the Dean of Student Affairs, Dr. Gary McCord, M.D., suggested he take a one year *Leave of Absence* (LOA) from the medical school and to take advantage of the mental health services afforded to all students (¶21-22).

8. Plaintiff was eventually referred to a psychiatrist, Dr. Michael Brown, M.D., also a college employee. On February 2013, Plaintiff visited with Dr. Brown, who diagnosed him with Test Phobia, Anxiety and Depression. Dr. Brown continued to treat Plaintiff from February 2013 till December 2013. During this time he never requested or administered any blood work or tests on him to determine if there could be a physical health component to Shaikh's perceived mental problems (¶25-27).

9. Brown continued to prescribe anti-depressants, as well as anxiety and blood pressure medications without providing Shaikh a thorough determination, physical exam or lab work up regarding Plaintiff's symptoms. Dr. Brown provided treatments not only in his capacity as a staff member of the university, but also in his individual capacity when serving Plaintiff at his private office at the Scott and White Hospital in College Station. [¶27]. Though unknown at the time, the anti-depressants prescribed by Dr. Brown were contraindicated in light of Plaintiff's actual (yet undiagnosed) medical condition. [¶28-31].

10. In January of 2014, the Student Promotion Committee voted to dismiss Plaintiff from the medical school, for his purported continued mental health problems [¶32]. Plaintiff appealed the dismissal which was denied [¶34]. It soon became impossible for him to pursue his medical education elsewhere or to even establish another career path with his undergraduate degree [¶38]. Nevertheless, in the Fall of 2014, Plaintiff applied to be re-admitted into the Medical School which was again denied [¶39-41].

11. In June of 2015 Plaintiff applied again for re-admission into the Medical School and was again denied [¶44]. During this period Shaikh first began to realize that the psychiatric care provided by Dr. Brown did not help him. He shared his concerns with another physician who ran some tests, blood work and an MRI. The results confirmed Plaintiff had a brain tumor,[1] called a Prolactinoma,[2] which causes an increase in the production of a hormone called prolactin ¶[47-48].

12. In Plaintiff's case, this caused loss of memory and concentration, depression, anxiety, extreme fatigue and muscle weakness.[3] Dr. Brown should have ordered, but

---

[1]. A brain tumor occurs when abnormal cells form within the brain and produce symptoms that vary depending on the part of the brain involved. Tumors in the frontal lobe can cause changes in the ability to think, create poor reasoning, inappropriate social behavior and personality changes. Since the frontal, temporal, and parietal lobes control inhibition, emotions, mood, judgement, reasoning and behavior, a primary or secondary tumor in that region can cause inappropriate social behavior, temper tantrums, laughing at things that aren't funny and even psychological symptoms such as depression and anxiety. Personality changes can have damaging effects as they can result in unemployment, unstable relationships, and lack of control. https://en.wikipedia.org/wiki/Brain_tumor.

[2]. A Prolactinoma is a tumor of the pituitary gland producing a hormone called prolactin. Symptoms include too much prolactin in the blood (hyperprolactinemia), or with too much pressure by the tumor on surrounding tissues" Glezer A, Bronstein MD (2015). "Prolactinomas". *Endocrinol Metab Clin North Am.* **1** (44): 71–78. https://en.wikipedia.org/wiki/PubMed_Identifier.

[3]. Per plaintiff's endocrinologist, Susan L. Samson, MD PhD FRCPC FACE Medical Director Pituitary Center, Associate Professor of Medicine, Baylor College of Medicine, Director of Endocrinology.

Response To Dr. Brown's Motion To Dismiss                                                                                            4

did not, a simple blood test which would have easily detected abnormal hormone levels commensurate with a tumor. If he had, appropriate treatment would have started at the initial time Plaintiff complained to Dr. Brown and he would not have had to endure these years of stress, anxiety and a worsening medical condition, as well as the resultant permanent record of being withdrawn from TAMU College of Medicine. [¶48].

13. Plaintiff then underwent immediate medical protocol which reversed the growth of tumor and progesterone level within four-months. There was no need for surgery. The tumor was also non-cancerous. Plaintiff's treating endocrinologist has noted that Mr. Shaikh's now current medication has no side effects and that he was then and continues to be capable of returning to Medical school [¶49].

## V. ARGUMENT AND AUTHORITIES

14. Plaintiff incorporates by reference all of the above related paragraphs with the same force and affect as if herein set forth, and likewise each section below incorporates the paragraphs and sections above it.

A. THE CLAIM AGAINST BROWN IS A HEALTHCARE LIABILITY CLAIM

15. Plaintiff agrees that his claim against Dr. Brown is a health-care liability claim, as defined by Chapter 74 of the Texas Civil Practices & Remedies Code.[4]

B. PLAINTIFF'S CLAIM IS NOT BARRED BY LIMITATIONS

    I. Relevant Factual Resume

16. Before Plaintiff proceeds in this section, he believes it is wise to simply re-affirm the

---

[4]. Importantly some of the procedural requirements of Chapter 74 that conflict with Federal Rules of Civil Procedure 26 [Disclosure and Discovery] and 37 [Sanctions], are not applicable here in federal court. *See* Passmore v. Baylor Health Care System, No. 15-10358 (5th Cir. May 19, 2016) [slip op.].

Response To Dr. Brown's Motion To Dismiss     5

operative dates. First, that he began treatment with Dr. Brown on or about February of 2013 [¶27]. Second that it ended in and around December of 2013 [¶27]. Last, that in and around June of 2015, Plaintiff learned that he did not suffer from a psychiatric condition but rather from a brain tumor. Further, that if Brown would have ordered the correct lab work during the period he treated Plaintiff in 2013, Shaikh would have received treatment for a brain tumor and not a mental health disability, and thus would not have needlessly suffered with problems with grades and ultimately dismissal from the Medical School. [¶47].

    II.       Plaintiff's Claim Is Not Limited As Contemplated By The *Open Courts* Provision of The Texas Constitution

17. Dr. Brown is correct that on first pass, the two-year limitations period, as set forth in Texas Civil Practices & Remedies Code §74.251, sets out the applicable standard for the affirmative defense of limitations. In addition, and also as duly noted by this Defendant, Texas law also makes no allowance for what is termed the "discovery rule," *citing* Menzoza v. Murphy, 532 F.3d 342 (5th Cir. 2008)[5] [analyzing Tex. Rev. Civ. Stat. art 4590i, *re-codified* at Tex. Civ. Prac. & Rem. Code 74.251]. Further, the Defendant argues, that since Dr. Brown's treatment of Shaikh ended in December of 2013 and he didn't file his complaint against him until June 1, 2016, more than two years after treatment ended, Shaikh's claim should be dismissed accordingly.

18. This analysis by Dr. Brown should be rejected because Shaikh's claim was tolled pursuant to the *Open Court Provision* of the Texas Constitution. In fact, the Doctor's reliance upon Mendoza is misplaced as this case actually helps Shaikh. Mendoza

---

[5]. Plaintiff notes that Mendoza was adjudicated after a *Motion For Summary Judgment* was filed.

Response To Dr. Brown's Motion To Dismiss                                                                6

argued that the *Open Courts Provision* of the Tex. Const. art. 1, §13 was applicable, in that it tolled the two-year limitations period, set forth in Tex. Rev. Civ. Stat. Ann. art. 4590i, §10.01 (now Tex. Civ. Prac. & Rem. Code §74.251) for him. This section of the Texas Constitution provides that:

*"All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law*."
TEXAS CONST. art. 1, §13.

Texas courts have interpreted this provision as protecting a citizen from statutory limitations that abridge a Plaintiff's "right to sue before he has a reasonable opportunity to discover the wrong and bring suit." Neagle v. Nelson, 685 S.W.2d 11, 12 (Tex. 1985) [under certain circumstances, the open courts doctrine tolls the commencement of the limitations period set out in §10.01 of former art. 4590i (and now at Section 74.251].

19. To prove an open courts violation, a plaintiff must show that (1) he has a cognizable common-law claim that section 10.01 (or 74.251) restricts and (2) the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis. Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2002); *see also* Weiner v. Wasson, 900 S.W.2d 316, 321 (Tex. 1995) [noting that the Texas Supreme Court has allowed plaintiff a "reasonable time" to file under the open courts doctrine only where claims that are "by their nature exceedingly difficult or impossible to discover"].

20. It is uncontroverted at this juncture of the litigation that Shaikh's claim of medical negligence, is a cognizable common-law claim. The next relevant question for the Court in its analysis, as Shaikh sees it, is whether or not the medical negligence of which he complains, the failure to correctly test for, diagnose and treat his tumor,

was "impossible or exceedingly difficult" for him to discover.  Weiner at 321.

21. In looking at Mendoza for guidance, we see that the Plaintiff alleged the physician was negligent, on November 28, 2001, when he was (mis)diagnosed with invasive bladder cancer, which means he should have filed his case by November 28, 2003 but he did not.  Mendoza relied upon the *Open Court's Provision* stating he had no reason to suspect this misdiagnosis until another expert examined the biopsy tissue in February 2005 and found no evidence of invasive cancer.  Based on a review of the entire record, the Court did not agree as there was another pathology report in the record from as early 2001 that indicated that Mendoza's cancer may not have been invasive.  As such, the Court reasoned, Mendoza was on notice well before February of 2005 of his physician's potential misdiagnosis, which was not impossible or exceedingly difficult to perceive, and rejected Mendoza's *Open Court* argument.

22. In the instant case, it is true that Brown's treatment ended no later than December 31, 2013 but it is equally true that Shaikh did not learn until June of 2015, that the psychiatric treatment he received from Brown was negligent, and that his actual medical condition was one of a brain tumor and not a psychiatric condition.  Here there was no earlier report upon which Shaikh could have been put on notice, as occurred in Mendoza, where there was a pathology report (from 2001).

23. More important, a brain tumor is exactly the type of condition that is "impossible or exceedingly difficult" to discover because it affects the brain, the very organ that addresses cognition and is needed to function correctly in order to learn of the problem in the first instance.  As noted above, when a person has a tumor it affects their ability to think and creates poor reasoning.  Moreover, Shaikh has specifically

pled a of loss of memory and concentration, also related to cognition and a symptom of a brain tumor. A good image would be "the blind spot" when driving a car. Even a good driver "can't see what they can't see." Similarly a person with limited cognition is not able to know his depression and anxiety was related to having a tumor and not the stress of medical school, which was what Brown opined and treated. Moreover, there is no such overt connection between depression and anxiety, and a tumor, that a reasonable person could discern.

24. Moreover, in Texas, a claim regarding limitations is an affirmative defense, pursuant to Tex. R. Civ. P. 94, with the burden on the Movant. <u>Quantum Che, Corp. v. Toennies</u>, 47 S.W.3d 473, 481 (Tex. 2001). Further, it must be brought, pursuant to Tex. R. Civ. P. 166a and in general, only when there has been adequate time for discovery. There has not been any discovery in this case. In <u>J.L. ex rel J.L. v. Ambridge Area School District</u>, 06-cv-1652 [50 IDELR 219], (W.D. Pa., July 18, 2008) that Court noted that any inquiry into the application of the statute of limitations requires a highly factual determination as to whether the person "knew or should have known" of violations that formed the basis of their complaint.

25. Further, the Court noted that whether or not a Defendant possesses a potentially viable defense in the statute of limitations, it is nevertheless improper for a Court to grant a motion to dismiss Plaintiffs' claims without conducting a thorough review of the record. In short, that the proper vehicle for review of the record and analysis of the applicable statute of limitations is on a motion for summary judgment. As Shaikh's *Open Court's* is predicated upon facts yet unknown, the Defendant's *Motion To Dismiss* should be denied until discovery could ensue.

## VI. CONCLUSION

26.     Plaintiff has provided significant factual support for his contention that this Court has jurisdiction over his claims against Dr. Brown and as such the *Motion To Dismiss* should be denied.

## V. PRAYER FOR RELIEF

THEREFORE, Plaintiff prays that Defendant Brown's *Motion To Dismiss*, be denied in total or in part, and in addition and in the alternative, he be permitted to replead, and for such other relief as this Court deems just and proper whether it be in law or and in equity, or in both.

Respectfully submitted,

/S/ MARTIN J. CIRKIEL
Martin J. Cirkiel
Cirkiel & Asosociates PC
1901 E. Palm Valley Blvd
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
State Bar Number: 00783829
SD. Fed I.D Number  21488
marty@cirkielaw.com (Email)

Donald G. Henslee
Attorney at Law
Law Offices of Donald G. Henslee
901 Mopac Expressway South
Barton Oaks Plaza One Suite 300
Austin, Texas 78746
State Bar Number 09488500
(512) 320-9177 [Telephone]
(512) 597-1455 [Facsimile]
dhenslee@school-law.co [Email]

Chigozie F. Odediran (Ms.)
Attorney at Law
Law Offices of Donald G. Henslee
901 Mopac Expressway South
Barton Oaks Plaza One Suite 300
Austin, Texas 78746
State Bar Number 24098196
(512) 320-9177 [Telephone]
(512) 597-1455 [Facsimile]
codediran@school-law.co [Email]
ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded to the following parties on this 26th day of August, 2016 by Notice of Electronic Filing from the Clerk of the Court.

ERIC A. HUDSON
Assistant Attorneys General
Attorney-in-Charge
Texas Bar No. 24059977
Southern District ID No. 1000759
Office of the Attorney General - 019
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-4058
(512) 320-0667 FAX
eric.hudson@texasattorneygeneral.gov [Email]
**Attorneys for Defendants**

                                        /s/ Martin Cirkiel
                                        Martin Cirkiel