UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
November 12, 2016
David J. Bradley, Clerk

| | | |
|---|---|---|
| Danyal Shaikh, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-16-591 |
| | § | |
| Texas A&M University | § | |
| College of Medicine, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Dismissal

1.   *Introduction.*

A medical school asked a student to withdraw after he failed a licensing examination and did not retake it when asked. Later, the school denied the student readmission. The student sued the school, school psychiatrist, medical school dean, and university president. His case will be dismissed.

2.   *Facts.*

Danyal Shaikh was a third-year student at Texas A&M University College of Medicine. In 2012, while studying for the first United States Medical Licensing Examination, he says that he struggled to focus. He talked to the dean of student affairs, who encouraged him to use one of the doctors funded by the medical school for students. Shaikh met with one of them, who referred him to Michael Brown, a school psychiatrist.

Brown diagnosed Shaikh with test phobia, anxiety, and depression, prescribing medications. Shaikh took a leave of absence in 2013 and continued treatment. Instead of improving, his symptoms worsened. During his leave, the school encouraged Shaikh to retake the licensing examination he had previously failed. He did not.

When he returned from his leave, the school dismissed him. He appealed the dismissal. The school let him choose to be dismissed or to withdraw. He withdrew because that meant that he could later apply to A&M or other schools. Paul Ogden, the interim dean of the medical school, suggested that he withdraw and, according to another dean, said that he would consider readmitting him.

In the fall of 2014, he applied for readmission. His application was denied because "he was not an acceptable applicant and . . . he was a liability for psychiatric reasons."

The dean of admissions encouraged him to take the licensing examination again. He tried but was rejected by the examiners because he was not a medical student. To improve his chances of readmission, he also enrolled in a master's degree program.

In June 2015, after researching his symptoms, Shaikh met with a general physician. With a blood test and a magnetic resonance image, the physician diagnosed him with a pituitary tumor. This had apparently been the problem all along. Shaikh was treated and recovered.

On Ogden's suggestion, Shaikh again applied to be readmitted to medical school. He was denied.

3.   *Michael Brown.*

Shaikh claims that Brown was medically negligent, negligent, and grossly negligent. This is a healthcare liability claim.[1] He did not bring his claim within two years from the date the treatment ended. Brown stopped treating Shaikh in December 2013. This case was filed in June 2016 – six months too late.

In Texas, a court may equitably toll the limitations period if the time restriction is unreasonable and arbitrary in light of the public and private interest in repose.[2] He not only had a reasonable opportunity to discover Brown's

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§74.001(a)(13), 74.251 (West 2011).

[2] *Mendoza v. Murphy*, 532 F.3d 342, 348 (5th Cir. 2008).

misdiagnosis within the period but actually discovered it then.[3] His treatment with Brown ended in December 2013; his symptoms had not improved. Suspecting that his was not a psychiatric condition, he researched his symptoms and visited a physician in June 2015. This physician's tests revealed that a tumor was causing his symptoms.

4.    *Michael Young.*

Michael Young is the president of Texas A&M University. In the pleadings, he does not play an active role in any part of the facts. As university president, Young guides overall policy for all the schools and departments that comprise the university. He does not select students for admission.

Shaikh sued Young for purported constitutional violations in his official capacity as university president.[4] As a public university, A&M is an arm of the state. As its president, Young is a state official. He may be sued in his official capacity for prospective relief only.[5] Shaikh is asking for money damages from him, including punitive damages. Young is officially immune.

5.    *Paul Ogden.*

Shaikh sued Paul Ogden, the interim dean of the medical school, under the Civil Rights Act of 1866.[6] He has not claimed that his ability to contract was taken away because of race.[7] Shaikh says he was discriminated against because he was supposedly disabled.

He had the ability to contract. When he was a student, he had a contract with the school – the school would educate him if he met its standards. That

--------

[3]*See Shah v. Moss,* 67 S.W.3d 836, 842 (Tex. 2001).

[4]*See* 42 U.S.C. §1983.

[5]*See Ex parte Young,* 209 U.S. 123 (1908).

[6] 42 U.S.C. §1981.

[7]*See Domino's Pizza v. McDonald,* 546 U.S. 470, 477 (1976).

contract ended when he failed the licensing examination and did not follow instructions. When Shaikh reapplied, the school considered contracting with him again and decided against it. He never had a contract with the school's dean. Encouraging a student to apply for readmission or expressing the opinion that someone is likely to be readmitted do not create a contract. At most, it might be an invitation for the student to deal with the school.

6.      *The School.*

    A.      *Americans with Disabilities Act.*

Title II of the Americans with Disabilities Act abrogates state sovereign immunity if the conduct independently violates the Constitution.[8] State sovereign immunity bars everything but constitutional claims.[9]

Shaikh says the school violated the statute when it dismissed him, denied his appeal of dismissal, did not reinstate him, blocked his access to his transcripts, and "failed and refused to reasonably accommodate and modify its services during the entire educational and grading process . . . ." He claims that the school did this because of his purported disability. He was not disabled; he had a pituitary tumor that was cured. Even if he had actually had test phobia, anxiety, and depression, he would not have been disabled. He says he could not focus and lists a variety of other mental and physical symptoms that he says made school difficult, yet he entered another graduate program in anesthesiology. Having difficulty completing the particular education Shaikh selected did not make him disabled.[10] Moreover, he did not ask to be accommodated ever; he did apply for readmission.

The school gave Shaikh due process. He has a property interest in his education if he meets the school's standards. He has a liberty interest in not

---

[8]*See United States v. Georgia*, 546 U.S. 151, 159 (2006); 42 U.S.C. §§12132, 12202.

[9]*Reickenbacker v. Foster*, 274 F.3d 974 (5th Cir. 2001).

[10]*See McGuinness v. University of New Mexico School of Medicine*, 170 F.3d 974 (10th Cir. 1998).

having his place at the school be taken away arbitrarily. The school's dismissing Shaikh after he failed the first part of the licensing examination once and did not retake it when the school asked him to was not arbitrary.[11] The school allowed an appeal. On reconsideration, it gave him a choice between dismissal or withdrawal. When he reapplied for reinstatement, the school chose to decline. Schools decline applications. Here, the school concluded that Shaikh was no longer an acceptable candidate for admission, having had the benefit of his application and more than two years of direct experience with him.

The school's blocking his access to his transcripts might have been standard procedure for a withdrawn student. The school might have given Shaikh access had he asked for it. Either way, nothing suggests that the school acted arbitrarily. The school did once accommodate him. It suggested and allowed him to take a year's leave for medical treatment.

Shaikh offers no facts to suggest that the school treated him differently because of his claimed disability.[12] He failed a test and did not follow instructions from the school or the licensing examiners. The school decided he could no longer be a student there. Because the school did not violate Shaikh's constitutional rights, his Disabilities Act claims are barred by state sovereign immunity.

B.     *Rehabilitation Act.*

Shaikh does not state a claim under the Rehabilitation Act.[13] He did not show that he was excluded from school solely because he was purportedly disabled.[14] According to him, after his reapplication was denied, the admissions dean explained the reasons for the denial. The school had decided that "he was not an acceptable applicant and that he was a liability for psychiatric reasons."

---

[11]*See Regents of University of Michigan v. Ewing*, 474 U.S. 214, 223 (1985).

[12]*See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[13]29 U.S.C. §794.

[14]*See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).

That does not mean that he was not readmitted because he was "disabled." It means that the school decided he was not a good risk for becoming a successful student and doctor. According to Shaikh, he had good grades before he failed the first part of the licensing examination. What came before does not change what happened next. He behaved erratically – he failed the examination and then did not follow the instructions of the school or the examiners. The school's deciding that he was a "liability for psychiatric reasons" is not a confirmation of a disability. It might be a characterization of his being difficult in his dealings with the school.

   C. *Civil Rights.*

  The school is immune from Shaikh's civil rights claims. As a public university, it is an arm of the state. It has not consented to be sued. These statutes do not abrogate state sovereign immunity.[15] The school is not a person who may be sued for due process and equal protection violations.[16]

7. *Injunction.*

  Shaikh has asked the court to enjoin the school. A stand-alone claim for injunctive relief does not exist. Even if he had requested an injunction as the remedy for his claims, he has pleaded no facts to support an injunction.

8. *State Law.*

  The second amended complaint included no state law claims against the school, its dean, or the university president. What appeared in the original complaint was superseded by amendment.[17]

---

[15] 42 U.S.C. §1983; 42 U.S.C. §1981.

[16] *See Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

[17] 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1476 (2010).

9.      *Conclusion.*

Shaikh will take nothing from Michael Brown, Michael Young, Paul Ogden, or Texas A&M University College of Medicine.


Signed on November  11, 2016, at Houston, Texas.


_____

Lynn N. Hughes
United States District Judge