# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States District Court
Southern District of Texas
**FILED**

JUL 1 2 2018

David J. Bradley, Clerk of Court

No. 16-20793

United States Court of Appeals
Fifth Circuit
**FILED**
June 20, 2018

Lyle W. Cayce
Clerk

DANYAL SHAIKH,

> Plaintiff - Appellant

v.

TEXAS A&M UNIVERSITY COLLEGE OF MEDICINE; MICHAEL K. YOUNG; PAUL OGDEN,

> Defendants - Appellees

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-591

---

Before DENNIS, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:*

    During his third year as a medical student at Texas A&M University College of Medicine (the "College"), Danyal Shaikh began suffering health problems caused by a pituitary tumor. After Shaikh's condition prevented him from passing a medical licensing exam by a certain deadline, the College gave him the option of being dismissed from the program or withdrawing. He

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20793

withdrew and was denied readmission on two subsequent occasions. Shaikh sued the College and Texas A&M University President Michael Young, in his official capacity, under 42 U.S.C. § 1983 ("Section 1983"), claiming violation of his rights under the Due Process Clause of the Fourteenth Amendment. Shaikh also sued the College under two federal statutes prohibiting discrimination against disabled individuals: Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131 *et seq*. The district court dismissed Shaikh's Section 1983 and ADA claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and his Section 504 claim for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). We affirm in part and reverse in part.

## I. BACKGROUND

The following facts are taken from Shaikh's second amended complaint. In May 2010, Shaikh enrolled as a medical student at Texas A&M University College of Medicine. In May 2012, as he was preparing to take Step 1 of the United States Medical Licensing Examination (the "USMLE Step 1"), Shaikh began having trouble studying and concentrating on school work. Shaikh had never experienced these problems before and expressed concerns to Dr. Gary McCord, the College's Dean of Student Affairs. Shaikh's symptoms persisted, and in September 2012, he emailed Dr. McCord, complaining once again about his difficulties studying. Dr. McCord advised Shaikh to use the free mental and behavioral health visits available to medical students at the College.

In late November 2012, Shaikh took the USMLE Step 1 but did not pass due to the ongoing health problems he was experiencing. In late January 2013, Dr. McCord advised Shaikh to take a one-year leave of absence so that he could study effectively for the USMLE Step 1. Shaikh followed Dr. McCord's recommendation, but his condition worsened over the course of the following

2

No. 16-20793

year, partly because university medical staff misdiagnosed him as suffering from test phobia, anxiety, and depression. During the leave of absence, Shaikh "experienced nervousness, dizziness, severe headaches, nausea, diarrhea, constipation, upset stomach, stomach pain, eye pain, abnormal ejaculation, difficulty having an orgasm, dry mouth, decreased impulse control, irritability, weight gain without a change in diet, increased lethargy, change in sleep patterns, worsened inability to concentrate, lack of motivation, increased anxiety, loss of sexual desire, and severe emotional distress." The College's Student Promotion Committee urged Shaikh to retake the USMLE Step 1 by certain deadlines during his leave of absence—deadlines which Shaikh maintains were "arbitrary"—or face dismissal, but he was unable to comply with those demands due to his condition.

Shaikh's leave of absence ended in January 2014. At that point, the Student Promotion Committee voted to dismiss him from the medical school. Prior to the onset of his symptoms, Shaikh had never failed any of his classes, and he had passed all the required curriculum necessary to progress to his third year of medical school, including his third-year clinical rotations, which he passed with honors.

When Shaikh appealed the dismissal, the College's Appeal Committee gave him the choice of withdrawing from the school or being dismissed. Shaikh chose to withdraw because that "gave him an option to be re-admitted into the [College] or other medical colleges." After filing for withdrawal, Shaikh met with Dr. McCord, who told him that the College's dean, Dr. Paul Ogden, had indicated that if Shaikh were to apply for readmission at some point, Dr. Ogden "would entertain [Shaikh's] being readmitted and having a chance to take the [USMLE Step 1] prior to signing up for any classes."

Shaikh applied for readmission to the College in the fall of 2014. During his admission interviews, members of the College faculty told Shaikh that they

3

No. 16-20793

wanted him to return to the school and that he had "a good chance" of being accepted back as a third-year student. Shaikh also obtained "a clearance from a psychiatrist." Nonetheless, the College denied his application for readmission. Shaikh subsequently met with the College's Dean of Admission, who told Shaikh "that the reason he [had been] denied readmission was because 'he was not an acceptable applicant and that he was a liability for psychiatric reasons.'" Shaikh also met with Dr. Ogden, who encouraged him to apply again the following year.

Shaikh applied for readmission a second time in June 2015 but was again rejected. To strengthen his application, Shaikh had enrolled in an anesthesiology program at another university. Shaikh had also attempted to retake the USMLE Step 1 but was not permitted to do so because he was not enrolled as a medical student. Around the time of his second application, the underlying cause of Shaikh's health problems was finally identified: he was diagnosed with a tumor of the pituitary gland (a part of the endocrine system located near the brain) called a prolactinoma. The tumor caused "an increase in the production of a hormone called prolactin" and "caused [Shaikh's] testosterone level to be very low," leading to "loss of memory and concentration, depression, anxiety, extreme fatigue, and muscle weakness." Shaikh "underwent immediate medical protocol which reversed the growth of [the] tumor . . . within four months." Shaikh maintains that his "current medication has no side effects" and that he "was and continues to be capable of returning to [m]edical school."

In March 2016, Shaikh filed suit against the College and Young. The College and Young moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of

No. 16-20793

the Federal Rules of Civil Procedure. The district court granted the motion and dismissed all of Shaikh's claims. Shaikh now appeals.[1]

## II. STANDARD OF REVIEW

We review *de novo* a district court's dismissal under Rules 12(b)(1) and 12(b)(6). *Quinn v. Guerrero*, 863 F.3d 353, 363 (5th Cir. 2017); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Rule 12(b)(1) provides for dismissal due to a "lack of subject-matter jurisdiction." Dismissal under Rule 12(b)(1) is appropriate if a claim is barred by state sovereign or Eleventh Amendment immunity. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240–41 (5th Cir. 2005); *United States v. Tex. Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999); *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice."). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. A court may dismiss under Rule 12(b)(1) "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

---

[1] The district court also dismissed Shaikh's claims against two other defendants, Dr. Ogden and Michael Brown, a university psychiatrist who treated Shaikh, as well as Shaikh's claim under 42 U.S.C. § 1981. Shaikh filed a general notice of appeal from the district court's order of dismissal but abandoned any challenge to the dismissal of these additional claims by failing to address them on appeal.

No. 16-20793

Rule 12(b)(6) provides for dismissal due to a "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must "'raise [the plaintiff's] right to relief above the speculative level'" but need not be detailed. *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)). When evaluating a Rule 12(b)(6) motion, the court's review is limited to the live complaint, any documents attached to that complaint, and any documents attached to the motion to dismiss that are "central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). "'[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)).

## III. DISCUSSION

### A. Section 1983

"Section 1983 provides a cause of action when a person has been deprived of federal rights under color of state law." *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 456 (5th Cir. 2010). Shaikh claims that the College and Young violated his rights under the Due Process Clause of the Fourteenth Amendment by, inter alia, requiring him to retake the USMLE Step 1 by arbitrary deadlines, constructively dismissing him from the College, and misleading him about the readmissions process. The district court concluded that the College and Young were entitled to state sovereign immunity from suit and dismissed Shaikh's Section 1983 claims on that basis.

6

No. 16-20793

On appeal, Shaikh does not address the district court's sovereign immunity determination and has therefore forfeited any challenge to that ruling. *Raj v. La. State Univ.*, 714 F.3d 322, 327 (5th Cir. 2013). We therefore affirm the district court's dismissal of Shaikh's Section 1983 claims pursuant to Rule 12(b)(1). We do not reach the merits of those claims. *Koehler v. United States*, 153 F.3d 263, 267 (5th Cir. 1998) ("[S]overeign immunity is jurisdictional and, therefore, deprives this court of the ability to hear the merits of [a] claim altogether.").

## B. Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" from discriminating against disabled individuals. 29 U.S.C. § 794(a);[2] *see also D.A.*, 629 F.3d at 453 ("[Section] 504 . . . broadly prohibit[s] discrimination against disabled persons in federally assisted programs or activities."). Shaikh claims that the College violated Section 504 by constructively dismissing him from the medical school program and by denying his applications for readmission. The College does not dispute that it has waived immunity from suit under Section 504 by accepting federal funding. *See* 42 U.S.C. § 2000d-7; *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d 342 (5th Cir. 2005) (en banc); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc). We therefore evaluate the dismissal of Shaikh's Section 504 claim under Rule 12(b)(6).

---

[2] The statute's text states, in pertinent part:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

No. 16-20793

To state a claim for relief under Section 504, a plaintiff must allege that she or he was: (1) an "individual with a disability"; (2) "otherwise qualified" for the program; and (3) excluded from, denied the benefits of, or otherwise subjected to discrimination under the program "solely by reason of her or his disability." 29 U.S.C. § 794(a). We consider each of these elements in turn.

## 1. "Individual with a Disability"

Under the Rehabilitation Act, an "individual with a disability" means any person who has a "disability," as that term is defined in the ADA. 29 U.S.C. §§ 794(a), 705(20)(B); *see also Ball v. LeBlanc*, 792 F.3d 584, 596 & n.10 (5th Cir. 2015). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). "[M]ajor life activities include . . . learning, reading, concentrating, thinking, . . . and working," as well as "the operation of a major bodily function, including . . . neurological, brain, . . . [and] endocrine . . . functions." *Id.* § 12102(2)(A)–(B). The ADA mandates that "[t]he definition of disability . . . be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the statute]." *Id.* § 12102(4)(A).

The pituitary tumor that afflicted Shaikh is clearly a "physical impairment." *See* 45 C.F.R. § 84.3(j)(2)(i) (defining "physical or mental impairment" to include "[a]ny physiological disorder or condition . . . affecting one or more . . . body systems," including the "endocrine" system). Furthermore, the factual allegations in Shaikh's complaint, taken as true, plausibly indicate that, from mid-2012 through the College's denial of his second application for readmission in 2015, this impairment substantially limited one or more of Shaikh's major life activities, including his endocrine functions and his ability to learn, concentrate, and think. The fact that Shaikh began receiving effective

8

No. 16-20793

medical treatment around the time of his second application does not establish that he no longer had a disability when the College denied that application, and drawing any such inference would contravene the ADA's broad definition of "disability" and the Rule 12(b)(6) standard. *See* 42 U.S.C. § 12102(4)(D) ("An impairment that is . . . in remission is a disability if it would substantially limit a major life activity when active."); *id.* § 12102(4)(E)(i)(I) ("The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication."); *Leal*, 731 F.3d at 410 (on a Rule 12(b)(6) motion, a court must "[a]ccept[] the well-pleaded facts as true and consider[] them, and the inferences to be drawn therefrom, in the light most favorable to [the plaintiff]").[3]

Because Shaikh has adequately alleged that he was actually disabled at all times relevant to this suit, we do not decide whether the factual allegations in his complaint also satisfy the "regarded as" portion of the ADA's definition of "disability."

## 2. "Otherwise Qualified"

To be "otherwise qualified" for a postsecondary education program, an individual with a disability must satisfy the program's "essential" requirements, with or without the aid of reasonable accommodations. *McGregor v. La. State Univ.*, 3 F.3d 850, 855 (5th Cir. 1993); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012); *Zukle v. Univ. of Cal.*, 166 F.3d 1041, 1046 (9th Cir. 1999).[4] A requirement is "essential" if "the

---

[3] *Hale v. King*, 642 F.3d 492 (5th Cir. 2011) (per curiam), applied the more restrictive definition of "disability" in effect prior to Congress's enactment of the ADA Amendments Act of 2008, *id.* at 499, and is therefore inapposite here.

[4] In *McGregor*, this court cited Department of Health and Human Services regulations interpreting the Rehabilitation Act. 3 F.3d at 855 (citing 45 C.F.R. § 84.3(k) (1992)). The

9

No. 16-20793

nature of the program would be fundamentally altered" without it. *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 158 (2d Cir. 2013) (citation and internal quotation marks omitted); *accord Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 930 (8th Cir. 1994); *see also Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017) (ADA case).[5] By contrast, an individual does not need to satisfy non-essential program requirements to be "otherwise qualified." *See Brennan v. Stewart*, 834 F.2d 1248, 1261–62 (5th Cir. 1988) (recognizing that the term "otherwise qualified" "cannot refer only to those already capable of meeting *all* the requirements—or else no reasonable requirement could ever violate [Section] 504"); *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir. 1991) (explaining, in a Section 504 employment discrimination case, that an individual is "otherwise qualified" if he can perform the "essential functions" of the job and that an "otherwise qualified" individual cannot be fired due to an inability to perform non-essential, "marginal" tasks).

---

current version of those regulations states, in pertinent part, that a "qualified handicapped person"—i.e., an "otherwise qualified individual with a disability," *see Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 929 n.3 (8th Cir. 1994)—means, "[w]ith respect to postsecondary and vocational education services, a handicapped person who meets the academic and technical standards requisite to admission or participation in the recipient's education program or activity." 45 C.F.R. § 84.3(*l*)(3). Regulations issued by the Department of Education contain identical language. 34 C.F.R. § 104.3(*l*)(3). These regulations are consistent with the rule that an individual's "otherwise qualified" status is assessed in terms of a program's "essential" requirements. *See* 34 C.F.R. § 104.44(a) ("Academic requirements that the recipient can demonstrate are *essential* to the instruction being pursued by such student or to any directly related licensing requirement will not be regarded as discriminatory within the meaning of this section." (emphasis added)); *McGregor*, 3 F.3d at 855 n.4 ("Technical [standards] are 'all nonacademic admissions criteria that are *essential* to participation in the program in question.'" (emphasis added) (quoting 45 C.F.R. pt. 84, App. A)).

[5] "The ADA and the Rehabilitation Act generally are interpreted *in pari materia*," *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc), and caselaw interpreting one statute is generally applicable to the other, *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002).

10

No. 16-20793

According to his complaint, Shaikh "successfully passed all the required curriculum" needed to progress to his third year of medical school and passed his third-year clinical rotations with honors. These well-pleaded factual allegations plausibly indicate that Shaikh satisfied the program's "essential" requirements at the time of his dismissal/withdrawal and that he was therefore "otherwise qualified" to remain in the program and to obtain readmission thereafter. *Cf. McGregor*, 3 F.3d at 860 (law student who did not meet the school's minimum cumulative GPA requirement was not "otherwise qualified" to remain in the program).

While Shaikh also alleges that he did not pass or retake the USMLE Step 1 by the end of his leave of absence, nothing on the face of his complaint establishes that doing so was an "essential" requirement of the program. The College's demand that Shaikh retake the exam during his leave of absence suggests that was *a* requirement for remaining in the program, but it may well have been a non-essential requirement, given the factual allegations before us at this stage.[6] Nor was passing the USMLE Step 1 an essential requirement

---

[6] Our conclusion in this regard does not, as the dissent asserts, "def[y] logic." It is not a logical imperative that satisfying a professional licensing requirement by a given date is essential to a educational program's nature or purpose. On the contrary, it is entirely plausible that a particular medical school's essential nature could entail the transfer of medical knowledge to students, regardless of whether those students ultimately become licensed to practice medicine in the United States. Shaikh's academic success at the College indicates that he possessed such knowledge. Presuming the opposite would exceed the bounds of "judicial experience and common sense." *See Iqbal*, 556 U.S. at 679.

In general, plaintiffs can state a plausible claim for relief under Section 504 without pleading detailed facts about a particular program requirement. Those administering a postsecondary education program "are entitled to some measure of judicial deference . . . , by reason of their experience with and knowledge of the program in question." *Strathie v. Dep't of Transp.*, 716 F.2d 227, 231 (3d Cir. 1983). Due to Section 504's remedial purpose, however, judicial deference extends only so far as there is "a factual basis in the record reasonably demonstrating" that the requirement at issue is necessary to "the essential nature of the program." *Id.*; *see also* 34 C.F.R. § 104.44(a) ("Academic requirements that the recipient can demonstrate are essential to the instruction being pursued by such student or to any directly related licensing requirement will not be regarded as discriminatory within the meaning of this section."); *Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d 758, 764 (5th Cir. 1996);

11

No. 16-20793

for readmission, given the College's statements and actions indicating that Shaikh remained eligible to reenter the program after his withdrawal.

Because Shaikh plausibly alleges that he satisfied the medical school's essential requirements *without* a reasonable accommodation, we need not determine whether he also plausibly alleges that he could have satisfied the program's requirements *with* a reasonable accommodation. *See Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 710 (5th Cir. 1997) (explaining, in an ADA employment discrimination case, that an individual's ability to perform non-essential job functions, with or without a reasonable accommodation, is irrelevant to whether the individual is "otherwise qualified").[7]

---

*cf. Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (en banc) (noting, in an ADA employment discrimination case, "that 'much of the information which determines th[e] essential functions [of a job] lies uniquely with the employer'" (quoting *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1113 (8th Cir. 1995))). In contrast to a motion for summary judgment, the limited scope of review permitted by a Rule 12(b)(6) motion to dismiss is not well suited to this type of evidence-intensive inquiry.

[7] A failure to provide a reasonable accommodation is just one of several theories that can support a claim of disability discrimination under the Rehabilitation Act. *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 305 & n.19 (5th Cir. 1981 Unit A); *Nunes v. Mass. Dep't of Correction*, 766 F.3d 136, 144–45 & n.7 (1st Cir. 2014). On a motion to dismiss, a court "must examine the complaint to determine if the allegations provide for relief on *any* possible theory." *Doss v. S. Cent. Bell Tel. Co.*, 834 F.2d 421, 424 (5th Cir. 1987) (emphasis added) (citations and internal quotation marks omitted); *see also Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014); *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) ("So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it fails to categorize correctly the legal theory giving rise to the claim." (internal quotation marks and citation omitted)). We note, however, that, contrary to the College's assertion, a reasonable-accommodation-based claim does not require the disabled individual to have "appl[ied] formally" for an accommodation. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621–22 (5th Cir. 2009) (A request for reasonable accommodation "does not have to mention the ADA or use the phrase 'reasonable accommodation.' Plain English will suffice."); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313–14 (3d Cir. 1999) (stating, in an ADA employment discrimination case, that "[w]hat matters . . . are not formalisms about the manner of the request, but whether the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.").

No. 16-20793

### 3. Discrimination "Solely by Reason of His Disability"

An individual with a disability is excluded from, denied the benefits of, or otherwise subjected to discrimination under a program "solely by reason of . . . his disability" if: (1) there is a "causal connection" between his disability and the discriminatory action; and (2) his disability was "the only cause" of the discriminatory action. *Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994) (citing *Teahan v. Metro-North Commuter R.R. Co.*, 951 F.2d 511, 515–17 (2d Cir. 1991)). The causal connection between the individual's disability and the discriminatory action "need not be direct" in order to satisfy the "sole reason" requirement: it is sufficient that the disability caused the individual to do or not do something, which, in turn, caused the discriminatory action. *Sedor*, 42 F.3d at 746. "[H]owever, to satisfy the 'solely' part of the 'solely by reason of' element, the disability must have been the *only* cause of the . . . conduct" that "trigger[ed]" the discriminatory action. *Id.* (emphasis added). This standard conforms to our caselaw, which recognizes that the phrase "solely by reason of" requires an individual's disability to be more than "simply a 'motivating factor'" in the discriminatory action. *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002).

The dissent argues that Shaikh must demonstrate a "direct causal nexus" between his disability and his dismissal in order to satisfy the "solely by reason of" requirement, but it is not clear what sort of discriminatory action—if any—would satisfy that test. According to the dissent, a "direct causal nexus" would exist here only if Shaikh's "disability *itself* was the *sole* reason for his dismissal." That formulation is even more problematic, however, because it is premised upon a false distinction between the "disability *itself*" and the disability's effects; as explained above, Section 504 and the ADA define "disability" in terms of real-life limitations, not abstract diagnoses. It seems that the dissent's test would encompass, at most, actions resulting solely from

13

No. 16-20793

discriminatory animus against an individual's disabled status. But Section 504's prohibitions are not confined to animus-based discrimination, as the Supreme Court has held. *Alexander v. Choate*, 469 U.S. 287, 295–97 & n.12 (1985) (observing that "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect," and that "much of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent").

Shaikh satisfies the "sole reason" requirement in this case. He plausibly alleges that his disability was the only cause of his failure to retake the USMLE Step 1 by the end of his leave of absence and that this failure triggered the College's decision to constructively dismiss him from the program. Shaikh also plausibly alleges that his disability was the "sole reason" the College denied his subsequent applications for readmission. The only reason those applications were necessary was because of the constructive dismissal, which was precipitated by Shaikh's inability to retake the exam within the timeframe set by the College due to his disability. Given this background, moreover, it is reasonable to construe the Dean of Admission's statement that Shaikh was "not an acceptable applicant" as a reference to his failure to retake the USMLE Step 1. The other portion of the Dean of Admission's statement—that Shaikh was "a liability for psychiatric reasons"—is consistent with this interpretation and may also constitute direct evidence that the College rejected Shaikh because of the mental limitations caused by his disability.[8] *See Rodriguez v.*

---

[8] Although Shaikh received a correct diagnosis only after being denied readmission, Section 504 and the ADA define "disability" in terms of the limitations that an impairment imposes on an individual, not the individual's particular diagnosis. 42 U.S.C. § 12102(1)(A); *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566–67 (1999). Taking the allegations in his

14

No. 16-20793

*Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016). The possibility of additional, or alternative, reasons for the College's decision does not detract from the plausibility of Shaikh's allegation that his disability was the "sole reason" he was denied readmission. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement' . . . ." (quoting *Twombly*, 550 U.S. at 557)).

*   *   *

Shaikh has stated a claim for relief under Section 504 of the Rehabilitation Act. The district court's dismissal of that claim is reversed.[9]

---

complaint as true, the College was aware of Shaikh's substantial mental limitations when it denied him readmission.

[9] This circuit has held that a plaintiff must show "intentional discrimination" to recover compensatory damages in a private suit under Section 504. *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002). We have not comprehensively defined "intentional discrimination," but under our caselaw, it includes "purposeful[]" discrimination, *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 184 (5th Cir. 2015) (unpublished decision), as well as actions "manifest[ing] some discriminatory animus." *Carter v. Orleans Par. Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984). Because damages are only one of several types of relief available under the statute, a plaintiff is not required to allege intentional discrimination to state a claim under Section 504. *See Laird v. Integrated Res., Inc.*, 897 F.2d 826, 841–42 (5th Cir. 1990). At oral argument, however, Shaikh's counsel stated that Shaikh now only seeks relief in the form of damages. As Shaikh has adequately alleged that the College intentionally discriminated against him, we need not decide whether this admission would support dismissal in other circumstances. *Cf. Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) ("It would be appropriate and indeed quite sensible for a judge confronting a complaint that does not demand proper relief to ascertain whether the plaintiff wants the improper relief sought in the complaint or nothing; if so, the complaint must be dismissed.").
    According to the complaint, College officials were aware of the substantial mental limitations Shaikh was experiencing and were also aware that those limitations substantially impaired his ability to sit for the USMLE Step 1. Nonetheless, the College constructively dismissed Shaikh for failing to retake the USMLE Step 1 and twice denied him readmission thereafter. This demonstrates sufficiently intentional discrimination to support a claim for damages. *See Delano-Pyle*, 302 F.3d at 575–76 (finding intentional discrimination where a police officer was aware that a hearing-impaired individual did not understand his verbal commands but persisted in ineffective verbal communication); *Perez*, 624 F. App'x at 184–86 ("Intent is usually shown only by inferences."). In addition, the Dean of Admission's statement that Shaikh "was a liability for psychiatric reasons" demonstrates some discriminatory animus.

15

No. 16-20793

## C. Title II of the Americans with Disabilities Act

Shaikh claims that the College violated Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Unlike Section 504 of the Rehabilitation Act, Title II of the ADA "applies to public entities regardless of whether they receive federal funds," *Pace*, 403 F.3d at 276 n.4, and thus implicates Congress's power to abrogate state sovereign/Eleventh Amendment immunity. The district court dismissed Shaikh's ADA claim on the ground that Title II does not abrogate the College's immunity in this case. Shaikh argues that it does and urges reversal.

Congress may abrogate state sovereign immunity if it (1) "makes its intention to abrogate unmistakably clear in the language of the statute" and (2) "acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003). The ADA contains a clear expression of Congress's intent to abrogate state immunity. *Tennessee v. Lane*, 541 U.S. 509, 518 (2004) (citing 42 U.S.C. § 12202). To determine whether Title II of the ADA is a valid exercise of Congress's authority under § 5 of the Fourteenth Amendment, courts apply the three-part inquiry set forth by the Supreme Court in *United States v. Georgia,* 546 U.S. 151 (2006); *see also Hale v. King*, 642 F.3d 492, 497–98 (5th Cir. 2011) (per curiam).

First, a court must determine "which aspects of the [s]tate's alleged conduct violated Title II." *Georgia*, 546 U.S. at 159. Here, Shaikh's ADA claim is based upon the same conduct underlying his Section 504 claim—i.e., the College's constructive dismissal of Shaikh and its denial of his applications for readmission. So far as this case is concerned, the only material difference

16

No. 16-20793

between Title II and Section 504 is that Title II contains a less demanding causation standard. *See Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). Because Shaikh has stated a claim under Section 504, we conclude, for purposes of *Georgia*'s abrogation analysis, that the same conduct is a violation of Title II of the ADA.

At the second part of the *Georgia* test, the court must determine "to what extent such misconduct also violated the Fourteenth Amendment." 546 U.S. at 159. "If the [s]tate's conduct violated both Title II and the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Hale*, 642 F.3d at 498. Otherwise, the court must proceed to the third step. Shaikh maintains that the College's conduct violated the Due Process Clause of the Fourteenth Amendment,[10] but his citation to *Lane*, a case involving "the fundamental right of access to the courts," 541 U.S. at 533–34, is not directly applicable here. Shaikh also argues that he had a property interest in his education, but even if that is assumed to be true, he fails to demonstrate that the College's actions ran afoul of the Due Process Clause. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84–90 (1978); *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

The third part of the *Georgia* inquiry requires the court to decide "whether Congress's purported abrogation of sovereign immunity as to that class of conduct"—i.e., conduct that violates Title II of the ADA but does not independently violate the Fourteenth Amendment—"is nevertheless valid." *Georgia*, 546 U.S. at 159; *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000) ("Congress' power 'to enforce' the [Fourteenth] Amendment includes the authority both to remedy and to deter violation of rights guaranteed

---

[10] Shaikh does not contend that the College's conduct violated the Equal Protection Clause or any constitutional provision incorporated by the Fourteenth Amendment.

17

No. 16-20793

thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text."). The district court erroneously concluded that "[s]tate sovereign immunity bars everything but constitutional claims." Shaikh, however, has failed to brief any meaningful argument that Congress's purported abrogation is "nevertheless valid" in this case and has therefore waived the issue. *See Raj*, 714 F.3d at 327.

Accordingly, we uphold the dismissal of Shaikh's ADA claim for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

## IV. CONCLUSION

For these reasons, we AFFIRM the district court's judgment with respect to Shaikh's claims under Section 1983 and Title II of the ADA, we REVERSE the district court's judgment with respect to Shaikh's claim under Section 504 of the Rehabilitation Act, and we REMAND for further proceedings consistent with this opinion.

No. 16-20793

EDITH BROWN CLEMENT, Circuit Judge, dissenting in part.

The majority holds that Shaikh has stated a plausible claim for disability discrimination under Section 504 of the Rehabilitation Act. Because I believe the district court properly dismissed Shaikh's Section 504 claim, I respectfully dissent from Part B of the majority's opinion.

I

In order to state a claim for a violation of Section 504, a plaintiff must allege that he is (1) disabled, (2) otherwise qualified, and (3) that he has been denied participation in or the benefits of services, programs, or activities provided by a public entity receiving federal funds on the basis of that disability. *See, e.g.*, *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 380 n.1 (5th Cir. 2016). The plaintiff's disability must be the *sole* cause of the discriminatory action—not merely a "motivating factor." *See Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002). Additionally, the plaintiff must allege that the public educational institution affirmatively refused to provide reasonable accommodations to allow the disabled student to participate in the program. *See Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 690 (5th Cir. 2017) (citing *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010)).

Shaikh fails to sufficiently plead Section 504's requirements. Even if Shaikh could establish that he had or was regarded as having had a cognizable disability, he fails to plausibly allege that he was otherwise qualified or that he requested and was refused reasonable accommodations to allow him to participate in the medical program. Moreover, the complaint makes clear that the primary basis for Shaikh's dismissal was his failure to retake and pass the USMLE—not his misdiagnosed psychiatric disability.

No. 16-20793

First, as Shaikh admits in his complaint, he failed to meet a key academic qualification for continued enrollment in the College: a passing score on the USMLE Step 1 (commonly referred to as "The Boards"). The College informed Shaikh repeatedly prior to his dismissal that he was expected to take and pass the test. The majority baldly states that the USMLE "may well have been a non-essential requirement." But this statement defies logic. Certainly a passing score on the first step of the *national* medical licensing examination—which evaluates a student's ability to "assess[] whether [he] understands and can apply important concepts of the sciences basic to the practice of medicine"—would qualify as an "essential" qualification for continued enrollment in a medical program. *See* http://www.usmle.org/step-1/. Shaikh's conclusory assertion that he was "otherwise qualified" simply because he had passable grades does not suffice to state a cause of action under Section 504. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotations omitted)).

Second, the majority entirely ignores that while Shaikh alleges generally in his complaint that the College "failed to provide [him] accommodations and modifications . . . so that he could remain in the medical program," he does not specify what, if any, accommodations he requested and was denied. In fact, Shaikh admits that he "did not apply formally for the accommodation under 504."[1] Absent any allegation that the College refused to provide a requested

---

[1] Notably, the complaint demonstrates that the College was actually proactive in trying to help Shaikh avoid leaving the medical program. After Shaikh brought his health concerns to the attention of Dr. McCord, Dr. McCord encouraged him to make use of the mental health resources the College offered. When Shaikh failed the USMLE, the College allowed him to take a leave of absence so that he could focus on studying for and retaking the test.

No. 16-20793

accommodation, Shaikh has failed to state a claim under Section 504. *See Doe*, 855 F.3d at 690 (citing *D.A. ex rel. Latasha A.*, 629 F.3d at 454).

Lastly, Shaikh has not sufficiently established a direct causal nexus between the College's alleged recognition of his misdiagnosed psychological disability and his dismissal. The majority acknowledges that "to satisfy the 'solely' part of the 'solely by reason of' element, the disability must have been the *only* cause of the . . . conduct" that "trigger[ed]" the discriminatory action. *Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994) (emphasis added). It then skirts this high bar by explaining that "[Shaikh's] disability was the only cause of his failure to retake the USMLE Step 1 by the end of his leave of absence and [] this failure triggered the College's decision to constructively dismiss him from the program." But the question is not whether Shaikh's disability was the principal reason he failed to retake the test—it is whether his disability *itself* was the *sole* reason for his dismissal. In support of their downstream causation theory, the majority cites only a Second Circuit case from 1994 that states the causal relationship between the disability and the discriminatory action "need not be direct." *Sedor*, 42 F.3d at 746. The majority then states that "[t]his standard conforms to our caselaw" without providing a single case from our circuit that expressly blesses the indirect cause analysis. Shaikh's disability was not the sole reason he was dismissed from the college. Indeed, it was not even the primary reason. The complaint indicates that the primary basis for Shaikh's dismissal was not his mental health issues, but his failure to meet a key academic requirement. That Shaikh's dismissal was clearly motivated by factors other than his disability is fatal to his Section 504 claim.

Accordingly, the district court properly dismissed Shaikh's claim for relief under Section 504 of the Rehabilitation Act. I respectfully dissent.