**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DANYAL SHAIKH,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Civil Action No. 4:16-CV-00591** |
| | § | |
| **TEXAS A&M UNIVERSITY** | § | |
| **COLLEGE OF MEDICINE et al.,** | § | |
| *Defendant.* | § | |

**MOTION FOR SANCTIONS: APPENDIX**

| | |
|---|---|
| Appx.002-3 | Dismissal Letter from Caribbean Medical School (Feb. 12, 2019) |
| Appx.004 | Request for Medical Leave of Absence from Case Western |
| Appx.005-7 | Email to Shaikh's counsel re questions about document production (Jun. 24, 2019) |
| Appx.008-9 | Email to Shaikh's counsel re outstanding documents (Aug. 28, 2019) |
| Appx.010-12 | Emails to Shaikh's counsel re outstanding documents (Sept. 5-6, 2019) |
| Appx.013-16 | Email to Shaikh's counsel re missing document production (Sept. 23, 2019) |
| Appx.017-23 | Status Conference Transcript Excerpts (Jun. 6, 2016) |
| Appx.024-28 | Status Conference Transcript Excerpts (Apr. 10, 2016) |
| Appx.029-42 | Status Conference Transcript Excerpts (Jun. 27, 2019) |



Date:   12 February 2019

RE:  Appeal to Dismissal

Dear Danyal,

I am in receipt of your email and letter of 11 February 2019.  To review your situation, you failed to meet the conditions of the Academic Progress Committee.

A review of your official transcript from Texas A&M University supports the following:

- You matriculated at Texas A&M University College of Medicine in 2010.
- Your last classes were fall 2012.

In your application to Trinity, you fully explain the medical issues that led to your withdrawal from Texas A&M.

A review of your academic record shows:

- Prior to matriculation you indicated you were planning to complete a review course.
- You matriculated as a transfer student in fall 2017 into Term 5.  Throughout Term 5, your academic progress was weak and you were unable to meet the minimum requirement on the Comprehensive Basic Science Exam (CBSE).
- You took several self-assessments after returning to the US during 2018 but additional attempts on the CBSE showed little improvement.
- The Academic Progress Committee directed you to demonstrate progress toward meeting the CBSE requirement.
- In August, you were provided an extension to meet the requirement by the end of the fall term.
- In December, you were provided an extension to meet the requirement by the end of January. The last CBSE attempt showed little improvement.
- The Academic Progress Committee (APC) recommended your dismissal.

In your appeal of 11 February, you revisited your medical history and the struggles you have had with test-taking which you attribute to your medical history. You point to your undergraduate academic success and your performance at Texas A&M prior to your medical history as evidence of your capabilities. However, in the past year, the APC saw little evidence of progress on the comprehensive exam.

Your appeal presents a 3-month plan to meet the minimum requirement of 69. You met with a psychiatrist in January to discuss your anxiety. He presents a plan to address your anxiety through intensive therapy and medication.  Your plan defines specific benchmarks over 3-months and you are confident you can meet the required CBSE score within this period. Yet, your score has improved little since you left Term 5 after an additional year of studying.

A review of your appeal and your academic record shows you have spent many years in pursuit of your dream.  After considering all aspects, the appeal to your dismissal is denied.  We wish you the best in the future.

Best wishes,

Linda R. Adkison, MS, PhD
Provost

c:      Frances Jack, MD
        Eric Froistad, CFO
        Mike Miller, PhD



SCHOOL OF
GRADUATE STUDIES

CASE WESTERN RESERVE
U N I V E R S I T Y

# Petition for a Leave of Absence

Name  Danyal Shaikh                                    ID Number  3220235

Email        dxs501@case.edu        Phone    832-413-2134        Dept.  Master of Science in Anesthesia

## Academic Policy on Leave of Absence from Graduate Study

The request must not exceed two consecutive academic semesters. In exceptional circumstances, a leave can be extended for another two semesters. The maximum amount of leave permitted per graduate program is four semesters. A leave of absence does not extend the maximum time permitted for the completion of degree requirements, and a leave cannot be taken while students are on extension of the five-year time limit.

Maternity, paternity or military obligations do not count toward the five-year time limit for degree completion. The length of the extension caused by maternity, paternity or military leave of absence may not exceed two years.

*If requesting a medical leave of absence, please provide additional documentation from your health care provider.*

I am requesting a:

[X] Leave of Absence                    ☐ Military Leave of Absence

☐ Maternity/Paternity Leave of Absence    [X] Medical Leave of Absence

through:

☐ Fall of _____    ☐ Spring of _____    [X] Summer of 2015 or 2016- Depending on Treatment Progression

In the space below, provide an explanation to support the reason for the leave of absence if not requesting a maternity, paternity or military leave of absence (please print legibly). You may attach a typed statement if you choose.

Danyal Shaikh has requested a medical leave of absence. His treatment plan could continue until 8/15. When offers are made to the 2017 cohort, March 2015, Danyal will receive an offer to re-matriculate with the class of 2017. If his treatment plan is not concluded or close to conclusion, he will then be offered a spot in the class of 2018, in March of 2016. He will be required to contact the program, at least once each semester (Spring 2015, Summer 2015, Fall 2015, Spring 2016), to inform us of his progress and his desire to return to the program.

Danyal must re-submit a $3000 deposit, as is required for all matriculants, and must audit all summer semester classes, as a refresher as being away from anesthesia for 10-22 months will require relearning most material.

His summer semester will require registering (and paying for) for ANES 461, Orientation to the operating room. All other classes can be audited as he has successfully completed them in the summer of 2014.

Auditing ANES 460, 440, and 485 will require full participation in the classes, including successful completion of the exams and coursework.

## Signatures

Student _____                    Date  **08/25/14**

Faculty Advisor _____             Date  9/24/14
GARY JONES, AA-C

Department Chair _____            Date  2016/14

Dean of Graduate Studies _____    Date _____

revised 03/10/11

**Appx.004**

| | |
|---|---|
| **From:** | Ardolino, Emily |
| **To:** | Martin Cirkiel; Nicole Schaper; Holly Terrell |
| **Cc:** | Smith, Merry |
| **Subject:** | RE: Shaikh v. Texas A&M |
| **Date:** | Monday, June 24, 2019 4:53:27 PM |

Marty,

I still have several questions about this production. See below:

4(B).    Medical records – There do not appear to be records from the following providers: Patrick Ray, Kathlyn Robyler, and Nicholas Bryant - The records from Patrick Ray and Kathlyn Robyler are attached.  Their names are signed electronically at the bottom of their notes. Those are all the records The TAMU Psych department that allowed Mr. Shaikh to have, but there should be more, but he was not allowed to have them for some reason.  Please note that none of Mr. Shaikh's listed doctors were clinicians at TAMU, so if you have requested records from TAMU, it is not surprising you didn't get any. The Court's order contemplated that we would receive all Shaikh's medical records, not just some. Texas law requires physicians to turn over medical records upon a patient's request. Tex. Occ. Code 159.006. If a request for medical records is denied, they must submit a signed written statement explaining the reasons why within 15 days of the request. 22 T.A.C. 16.52. Will you please confirm that you have sent requests to each of the providers you listed and indicate whether any declined to produce Shaikh's records and their stated reasons for failing to do so?

4(C).    Current medical school records – Mr. Shaikh said TAMU Health refused to send him his complete and full medical records no matter how much he insisted and even though his appts and visits continued with them much after the last dated document/statement they sent him. The Court ordered you to produce the educational records from Mr. Shaikh's current medical school. It was my (and I believe the Court's) understanding based on your representations that Mr. Shaikh was currently attending medical school outside the country. Please produce his educational records from this school. If Mr. Shaikh is no longer attending medical school, I think the order fairly encompasses his educational records from any medical school he attended after TAMU. Please indicate the status of these records.

4(D).    Applications to other medical schools and responses – None of these applications or responses appear to have been produced - – Mr. Shaikh contacted the Caribbean/international schools and they do not keep previous files of applicants that were denied or did not attend the school if offered acceptance.   Mr. Shaikh provided the applications and decisions/responses he did have and I believe those were produced  - Mr. Shaikh contacted the Caribbean/international schools and they do not keep previous files of applicants that were denied or did not attend the school if offered acceptance.   Mr. Shaikh provided the applications and decisions/responses he did have and I believe those were produced.  Attached is a recent application to a Perfusion Medical Technology School Mr. Shaikh applied but was denied acceptance. We currently have no documentation relating to any application to a medical school program (other than TAMU) since 2010. Regardless of whether the schools he applied to have copies of these records, Mr. Shaikh should have retained his own copies of these materials pursuant to his litigation obligations. Please produce these documents and/or explain why they no longer exist.

4(E).    Other documents relating to damages -- The only documents included in the production are those relating to one of Shaikh's student loan payments, TMDSAS application fee, and fees for coursework at Case Western Reserve. Please confirm that these are the only damages Shaikh is

seeking in this lawsuit.  - attached is the invoice from Mr. Shaikh's  visit to Dr. Bryant and a private loan document. Do we now have all of the documents relating to the damages Shaikh is claiming? If the damages you have asserted in your Initial Disclosures served in 2016 and your calculation of them have changed, please supplement your Initial Disclosures to reflect such changes.

Mr. Shaikh is currently Houston and is available for deposition. Thank you. I anticipate Judge Hughes will want to discuss next steps, including depositions. However, I think it would be most efficient to resolve the outstanding issues with the document production before Mr. Shaikh's deposition.

**From:** Martin Cirkiel <marty@cirkielaw.com>
**Sent:** Monday, June 24, 2019 1:32 PM
**To:** Ardolino, Emily <Emily.Ardolino@oag.texas.gov>; Nicole Schaper <candace@cirkielaw.com>; Holly Terrell <holly@cirkielaw.com>
**Subject:** Re: Shaikh v. Texas A&M

FYI

On Fri, Jun 21, 2019 at 2:14 PM <candace@cirkielaw.com> wrote:

>    Please see my notes in red responsive to OC's questions on shaikh production.  I also attached supplemental production, which An'el bates stamped- thank you!!
>    4(B).     Medical records – There do not appear to be records from the following providers: Patrick Ray, Kathlyn Robyler, and Nicholas Bryant - The records from Patrick Ray and Kathlyn Robyler are attached.  Their names are signed electronically at the bottom of their notes. Those are all the records The TAMU Psych department that allowed Mr. Shaikh to have, but there should be more, but he was not allowed to have them for some reason.
>    4(C).     Current medical school records – Mr. Shaikh said TAMU Health refused to send him his complete and full medical records no matter how much he insisted and even though his appts and visits continued with them much after the last dated document/statement they sent him.
>    4(D).     Applications to other medical schools and responses – None of these applications or responses appear to have been produced - – Mr. Shaikh contacted the Caribbean/international schools and they do not keep previous files of applicants that were denied or did not attend the school if offered acceptance.   Mr. Shaikh provided the applications and decisions/responses he did have and I believe those were produced  - Mr. Shaikh contacted the Caribbean/international schools and they do not keep previous files of applicants that were denied or did not attend the school if offered acceptance.   Mr. Shaikh provided the applications and decisions/responses he did have and I believe those were produced.  Attached is a recent application to a Perfusion Medical Technology School Mr. Shaikh applied but was denied acceptance.
>    4(E).     Other documents relating to damages -- The only documents included in the production are those relating to one of Shaikh's student loan payments, TMDSAS application fee, and fees for coursework at Case Western Reserve. Please confirm that these are the only damages Shaikh is seeking in this lawsuit.  - attached is the invoice from Mr. Shaikh's  visit to Dr. Bryant and a private loan document.

Mr. Shaikh is currently Houston and is available for deposition.

| | |
|---|---|
| **From:** | Ardolino, Emily |
| **To:** | Holly Terrell; Martin Cirkiel |
| **Cc:** | Smith, Merry |
| **Subject:** | Shaikh v. TAMU -- Document Production |
| **Date:** | Wednesday, August 28, 2019 2:06:31 PM |

Marty and Holly,

I have reviewed the records you have produced and have noticed that some may be missing. I want to highlight these for you so that you confirm that you will produce these or that they will be included in the third-party (medical, education, and employment) records that you will produce by Sept 20. Please recall that at the last hearing, Judge Hughes indicated that you should produce records held by third parties <u>with business records affidavits</u>.

Specifically, we expect to receive the following (and, of course, any others of which we are not yet aware):

<u>Medical Records</u> (these were supposed to be produced to us on May 21, 2019, per the court's original order):

Susan L. Sampson

Sumera Salamat

Patrick Ray

Kathlyn Robyler

Emily Worthy

Theresa Quinn

Michael Brown

Lisa Davis

Nicholas Bryant

Brian Jiang

<u>Educational Records</u> (these were also originally supposed to be produced to us on May 21, per the court's original order):

- Case Western Reserve – transcripts/evaluations, including documents/communications relating to Shaikh's requested Medical LOA in August 2014
- Trinity Medical Sciences University – transcripts/evaluations, including documents/communications relating to Shaikh's dismissal
- American University of Antigua – transcripts/evaluations, including documents related to withdrawal and/or dismissal from program

Additionally, it appears that there are records likely to be in Shaikh's possession that have not been produced, particularly those relating to his applications/acceptance to other medical schools:

- Documents/communications re Shaikh's appeal of his dismissal from Trinity
- Documents/communications re Shaikh's medical leave from Case Western Reserve
- Letter of evaluation from Margaret Basarab (referenced in Shaikh/TAMU 000054)
- Applications to Trinity, American U of Antigua, Avalon U School of Medicine, Medical U of Americas, UTRGV, Drexel U College of Medicine, Southern Illinois U

**Appx.008**

Response on applications/advance standing requests from UTRGV, Drexel, American U of Antigiua, Southern Illinois U, Quinnipiac, others?
- Attachments to email from Avalon U (Shaikh/TAMU 354-55)

Please confirm that you have requested the above-listed records and intend to produce these by Sept. 20. Please also confirm that you have done a thorough search for records in Mr. Shaikh's possession relating to the above topics and have produced all documents.

Much thanks,

**Emily Ardolino**
Assistant Attorney General
General Litigation Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-4103 (phone)
(512) 320-0667 (fax)
emily.ardolino@oag.texas.gov

| | |
|---|---|
| **From:** | Ardolino, Emily |
| **To:** | Holly Terrell |
| **Cc:** | Holly Terrell; Martin Cirkiel; Smith, Merry |
| **Subject:** | RE: Shaikh v. TAMU -- Document Production |
| **Date:** | Friday, September 6, 2019 12:19:51 PM |

Thanks, Holly. Do you have a sense of how many more documents you still have to produce? My concern is that we will not get the bulk of court-ordered documents (educational and medical records, in particular) in sufficient time for me to review them before Shaikh's deposition in mid-October. Given that the court had initially ordered Plaintiff to produce these documents back in 2016 before the case went on appeal, then again ordered their production in May of this year, then again ordered their production in July, it is concerning that there appear to be so many that still have yet to be produced because they are ostensibly coming from third parties despite the fact that Shaikh has had effective control over these documents throughout this entire time period.

Given the apparent incompleteness of the production and the excessive delays despite multiple court orders to produce, we are prepared to file a motion to compel—though I would, of course, rather not have to do that. If you would like to discuss further, please feel free to give me a call.

Thank you for your attention to this matter.

Best,
Emily

**From:** Holly Terrell <hollyterrelllaw@gmail.com>
**Sent:** Friday, September 6, 2019 6:47 AM
**To:** Ardolino, Emily <Emily.Ardolino@oag.texas.gov>
**Cc:** Holly Terrell <holly@cirkielaw.com>; Martin Cirkiel <marty@cirkielaw.com>; Smith, Merry <Merry.Smith@oag.texas.gov>
**Subject:** Re: Shaikh v. TAMU -- Document Production

I am working on both. I will give you an update regarding the deposition as soon as I have more info.

On Sep 5, 2019, at 7:37 PM, Ardolino, Emily <Emily.Ardolino@oag.texas.gov> wrote:

> Marty and Holly,
>
> I have not received a response from you on the below discovery issues or Shaikh's deposition dates. What is the status?
>
> Best,
> Emily

**From:** Ardolino, Emily
**Sent:** Wednesday, August 28, 2019 2:07 PM
**To:** Holly Terrell <holly@cirkielaw.com>; Martin Cirkiel <marty@cirkielaw.com>

**Appx.010**

**Cc:** Smith, Merry <Merry.Smith@oag.texas.gov>
**Subject:** Shaikh v. TAMU -- Document Production

Marty and Holly,

I have reviewed the records you have produced and have noticed that some may be missing. I want to highlight these for you so that you confirm that you will produce these or that they will be included in the third-party (medical, education, and employment) records that you will produce by Sept 20. Please recall that at the last hearing, Judge Hughes indicated that you should produce records held by third parties with business records affidavits.

Specifically, we expect to receive the following (and, of course, any others of which we are not yet aware):

Medical Records (these were supposed to be produced to us on May 21, 2019, per the court's original order):
Susan L. Sampson
Sumera Salamat
Patrick Ray
Kathlyn Robyler
Emily Worthy
Theresa Quinn
Michael Brown
Lisa Davis
Nicholas Bryant
Brian Jiang

Educational Records (these were also originally supposed to be produced to us on May 21, per the court's original order):
- Case Western Reserve – transcripts/evaluations, including documents/communications relating to Shaikh's requested Medical LOA in August 2014
- Trinity Medical Sciences University – transcripts/evaluations, including documents/communications relating to Shaikh's dismissal
- American University of Antigua – transcripts/evaluations, including documents related to withdrawal and/or dismissal from program

Additionally, it appears that there are records likely to be in Shaikh's possession that have not been produced, particularly those relating to his applications/acceptance to other medical schools:
- Documents/communications re Shaikh's appeal of his dismissal from Trinity
- Documents/communications re Shaikh's medical leave from Case Western Reserve
- Letter of evaluation from Margaret Basarab (referenced in Shaikh/TAMU

000054)
- Applications to Trinity, American U of Antigua, Avalon U School of Medicine, Medical U of Americas, UTRGV, Drexel U College of Medicine, Southern Illinois U
- Response on applications/advance standing requests from UTRGV, Drexel, American U of Antigiua, Southern Illinois U, Quinnipiac, others?
- Attachments to email from Avalon U (Shaikh/TAMU 354-55)

Please confirm that you have requested the above-listed records and intend to produce these by Sept. 20. Please also confirm that you have done a thorough search for records in Mr. Shaikh's possession relating to the above topics and have produced all documents.

Much thanks,

**Emily Ardolino**
Assistant Attorney General
General Litigation Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-4103 (phone)
(512) 320-0667 (fax)
emily.ardolino@oag.texas.gov

| | |
|---|---|
| **From:** | Ardolino, Emily |
| **To:** | Holly Terrell |
| **Cc:** | Holly Terrell; Martin Cirkiel; Smith, Merry |
| **Subject:** | RE: Shaikh v. TAMU -- Document Production |
| **Date:** | Monday, September 23, 2019 7:15:31 PM |

Marty and Holly,

Friday was the court-ordered deadline for Shaikh to produce documents from his medical providers and educational institutions. As laid out in the emails I sent last month, we were expecting—at a minimum—complete medical records and educational records from Shaikh's other medical schools with accompanying business records affidavits. But we have not received these records. We also have reason to believe Mr. Shaikh is in possession of additional records that have not yet been produced related to his dismissal from Trinity Medical Sciences University, as it appears from the single document you did produce that there were appeal proceedings surrounding his dismissal.

Can you please advise if these documents were sent? And, if not, when we can expect them?

I also did not receive a response from you regarding potential dates for Mr. Shaikh's deposition. My schedule for October is filling fast, and, as I expressed several weeks ago, I am concerned that there will not be sufficient time for me to review the documents that still have not been produced. As an interim measure, I intend to serve a deposition notice for October 15 or 16. However, at this point, I may need to ask the court for more time given the uncertain status of your document production.

Given that your failure to produce these documents is in violation of multiple court orders, please know that if we do not receive these documents by Wednesday, I intend to seek relief from the court.

Best,
Emily

**From:** Ardolino, Emily
**Sent:** Friday, September 6, 2019 12:20 PM
**To:** Holly Terrell <hollyterrelllaw@gmail.com>
**Cc:** Holly Terrell <holly@cirkielaw.com>; Martin Cirkiel <marty@cirkielaw.com>; Smith, Merry <Merry.Smith@oag.texas.gov>
**Subject:** RE: Shaikh v. TAMU -- Document Production

Thanks, Holly. Do you have a sense of how many more documents you still have to produce? My concern is that we will not get the bulk of court-ordered documents (educational and medical records, in particular) in sufficient time for me to review them before Shaikh's deposition in mid-October. Given that the court had initially ordered Plaintiff to produce these documents back in 2016 before the case went on appeal, then again ordered their production in May of this year, then again ordered their production in July, it is concerning that there appear to be so many that still have yet to be produced because they are ostensibly coming from third parties despite the fact that Shaikh has had effective control over these documents throughout this entire time period.

Given the apparent incompleteness of the production and the excessive delays despite multiple court orders to produce, we are prepared to file a motion to compel—though I would, of course, rather not have to do that. If you would like to discuss further, please feel free to give me a call.

Thank you for your attention to this matter.

Best,
Emily

---

**From:** Holly Terrell <hollyterrelllaw@gmail.com>
**Sent:** Friday, September 6, 2019 6:47 AM
**To:** Ardolino, Emily <Emily.Ardolino@oag.texas.gov>
**Cc:** Holly Terrell <holly@cirkielaw.com>; Martin Cirkiel <marty@cirkielaw.com>; Smith, Merry <Merry.Smith@oag.texas.gov>
**Subject:** Re: Shaikh v. TAMU -- Document Production

I am working on both. I will give you an update regarding the deposition as soon as I have more info.

On Sep 5, 2019, at 7:37 PM, Ardolino, Emily <Emily.Ardolino@oag.texas.gov> wrote:

> Marty and Holly,
>
> I have not received a response from you on the below discovery issues or Shaikh's deposition dates. What is the status?
>
> Best,
> Emily
>
> ---
>
> **From:** Ardolino, Emily
> **Sent:** Wednesday, August 28, 2019 2:07 PM
> **To:** Holly Terrell <holly@cirkielaw.com>; Martin Cirkiel <marty@cirkielaw.com>
> **Cc:** Smith, Merry <Merry.Smith@oag.texas.gov>
> **Subject:** Shaikh v. TAMU -- Document Production
>
> Marty and Holly,
>
> I have reviewed the records you have produced and have noticed that some may be missing. I want to highlight these for you so that you confirm that you will produce these or that they will be included in the third-party (medical, education, and employment) records that you will produce by Sept 20. Please recall that at the last hearing, Judge Hughes indicated that you should produce records held by third parties with business records affidavits.
>
> Specifically, we expect to receive the following (and, of course, any others of which we

**Appx.014**

are not yet aware):

Medical Records (these were supposed to be produced to us on May 21, 2019, per the court's original order):
Susan L. Sampson
Sumera Salamat
Patrick Ray
Kathlyn Robyler
Emily Worthy
Theresa Quinn
Michael Brown
Lisa Davis
Nicholas Bryant
Brian Jiang

Educational Records (these were also originally supposed to be produced to us on May 21, per the court's original order):
- Case Western Reserve – transcripts/evaluations, including documents/communications relating to Shaikh's requested Medical LOA in August 2014
- Trinity Medical Sciences University – transcripts/evaluations, including documents/communications relating to Shaikh's dismissal
- American University of Antigua – transcripts/evaluations, including documents related to withdrawal and/or dismissal from program

Additionally, it appears that there are records likely to be in Shaikh's possession that have not been produced, particularly those relating to his applications/acceptance to other medical schools:
- Documents/communications re Shaikh's appeal of his dismissal from Trinity
- Documents/communications re Shaikh's medical leave from Case Western Reserve
- Letter of evaluation from Margaret Basarab (referenced in Shaikh/TAMU 000054)
- Applications to Trinity, American U of Antigua, Avalon U School of Medicine, Medical U of Americas, UTRGV, Drexel U College of Medicine, Southern Illinois U
- Response on applications/advance standing requests from UTRGV, Drexel, American U of Antigiua, Southern Illinois U, Quinnipiac, others?
- Attachments to email from Avalon U (Shaikh/TAMU 354-55)

Please confirm that you have requested the above-listed records and intend to produce these by Sept. 20. Please also confirm that you have done a thorough search for records in Mr. Shaikh's possession relating to the above topics and have produced all documents.

Much thanks,

**Emily Ardolino**
Assistant Attorney General
General Litigation Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-4103 (phone)
(512) 320-0667 (fax)
emily.ardolino@oag.texas.gov

1           IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
2                   HOUSTON DIVISION

3  DANYAL SHAIKH              )      NO. 4:16-CV-591
                             )
4                             )
   VS.                        )      Houston, Texas
5                             )      9:14 a.m.
                             )
6  TEXAS A&M COLLEGE OF       )      June 6, 2016
   MEDICINE, ET AL            )
7

8
   *******************************************************
9
                        HEARING
10
        BEFORE THE HONORABLE LYNN N. HUGHES
11
            UNITED STATES DISTRICT JUDGE
12
   *******************************************************
13

14 APPEARANCES:

15 FOR THE PLAINTIFF:

16      Mr. Donald G. Henlsee
        Law Office of Donald G. Henslee
17      901 Mopac Expressway South, Suite 300
        Austin, TX 78746
18      Tel:  512-320-9177

19 FOR THE DEFENDANT:

20      Mr. Eric Alan Hudson
        Texas Attorney General
21      300 W. 15th St.
        Austin, TX 78711
22      Tel:  512-463-2120

23      Mr. Joe Galvan
        Office of General Counsel
24      Texas A&M University System

25

2

1  COURT REPORTER:

2        Ms. Kathleen K. Miller, CSR, RMR, CRR
         515 Rusk, Room 8004
3        Houston, Texas  77002
         Tel:  713-250-5087

4

   Proceedings recorded by mechanical stenography.
5
   Transcript produced by computer-assisted transcription.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              MR. GALVAN:  Joe Galvan.
 2              THE COURT:  Sorry about the glitch.  We thought
 3  you were just an ordinary bureaucrat.  You're worse.
 4  You're a bureaucrat with a law degree, which I guess to a
 5  large extent so am I.
 6              All right.  Mr. Henslee.
 7              MR. HENSLEE:  Yes, sir.
 8              THE COURT:  Do they have Mr. Shaikh --
 9              MR. HENSLEE:  Shaikh.
10              THE COURT:  Shaikh.  Do they have his medical
11  records through all -- all of his medical records through
12  all of this, and antecedent to?  So he is about 25 or so?
13              MR. HENSLEE:  He's a little older than that
14  now.  I think he is 28.
15              THE COURT:  Okay.  So, let's have him give you
16  a list of every doctor he's seen, and I want -- the word
17  "doctor" includes priests, faith healers, gurus, anybody
18  he's gone to, the psychologists who aren't real, family
19  therapists, anybody from whom he has ever sought medical
20  care in that broad sense.
21              MR. HENSLEE:  Sure.
22              THE COURT:  Mental, physical.  The year, for
23  what, who the doctor was, if he remembers.  He can probably
24  remember where, of course, he is not that old.  He doesn't
25  have a lot to remember like mature and responsible people.
```

09:17:01

09:17:19

09:17:38

09:18:17

09:18:35

1           Because even though there was a tumor, we

2 have no idea what the ground state was.

3           What is he doing for a living now?

4           MR. HENSLEE:  He is -- he's doing some lab

09:19:02   5 work.

6           THE COURT:  For whom?

7           MR. HENSLEE:  You know, I don't know the name

8 of the company he is doing lab work for.

9           THE COURT:  We need his entire employment

09:19:10  10 history and that includes academic history.

11          MR. HENSLEE:  Yes, sir.

12          THE COURT:  So if the he is a full-time student

13 somewhere at some point for the last -- since he got out of

14 high school.

09:19:20  15          MR. HENSLEE:  Yes, sir.

16          THE COURT:  And he needs to keep a record of

17 every place he -- reconstruct it, if he hasn't done it,

18 every place he has applied for academic performance or

19 employment.

09:19:53  20          It's my understanding for the disability,

21 the only legitimate defendant would be the university, the

22 employer, the school.

23          MR. HENSLEE:  Yes, sir.

24          THE COURT:  Not this fellow Young.  What does

09:20:15  25 he do there?

1          THE COURT:  Speak up.

2          MR. GALVAN:  They handle all of the student

3 affairs, you know, like --

4          THE COURT:  Student affairs?

09:28:29    5          MR. GALVAN:  -- registration.

6          THE COURT:  They would have been busy when I

7 was in college.  I had a lot of affairs, in my mind mostly.

8          MR. GALVAN:  Scheduling, handling the records,

9 that sort of thing.

09:28:47    10          THE COURT:  You couldn't just call it student

11 records?  No.  Because the title -- you know, there is a

12 rule in the world:  The longer the title, the weaker the

13 position.  And similarly, the more complicated

14 institutional title, the less likely it is to be effective.

09:29:15    15 The Department of Defense does a pretty good job.  The

16 Department of Homeland Security, on the other hand, doesn't

17 know what it's doing.

18          Have you sent him the endocrinology

19 records that you quote here?

09:30:12    20          MR. HENSLEE:  No, sir.

21          THE COURT:  Well, let's get them to them.

22          I don't -- if this guy told him to take

23 the step one, again, when he was not a student, and that

24 was, in fact, not possible, he's a medical student.  He's

09:30:45    25 not in the fourth grade where somebody needs to tell him

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

**Appx.021**

1   point, you know, we would better be able to evaluate how to

2   proceed.

3            THE COURT:  Well, after I rule -- I don't, of

4   course, have any idea what I am going to rule, but then we

09:44:04   5   are going to really get busy quickly.  We are going to move

6   this along.  I don't know whether you have noticed this,

7   but cases don't get better the longer they sit.

8            Anything else this morning we can usefully

9   do?

09:44:26   10           MR. HUDSON:  Not from us, Your Honor.

11           MR. HENSLEE:  Not from us, Your Honor.

12           THE COURT:  Is there anything he forgot to say

13   that you thought he should say?

14           MR. GALVAN:  No, Your Honor.

09:44:39   15           THE COURT:  Okay.  Produce that stuff I told

16   you.

17           MR. HUDSON:  Yes, Your Honor.

18           THE COURT:  And if in the process you come by

19   something similar, give it to him.

09:44:53   20           MR. HUDSON:  Yes, Your Honor.  Thank you.

21           THE COURT:  Going to figure it out at some

22   point.

23                  (Concluded at 9:44 a.m.)

24

25

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

**Appx.022**

1                    COURT REPORTER'S CERTIFICATE

2

3        I, Kathleen K. Miller, certify that the foregoing is a

4  correct transcript from the record of proceedings in the

5  above-entitled matter.

6

7                            /s/_____

8  DATE:   June 24, 2016        Kathleen K. Miller, RPR, RMR, CRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

1           **UNITED STATES DISTRICT COURT**
            **SOUTHERN DISTRICT OF TEXAS**
2                **HOUSTON DIVISION**

3

   DANYAL SHAIKH              *   4:16-CV-00591
4                             *
   V.                         *   10:59 A.M. to 11:41 A.M.
5                             *
   TEXAS A&M UNIVERSITY       *
6  COLLEGE OF MEDICINE        *   APRIL 10, 2019

7              **CONFERENCE IN CHAMBERS**
         **BEFORE THE HONORABLE LYNN N. HUGHES**
8                  **Volume 1 of 1 Volume**
   **APPEARANCES**

9

   **FOR THE PLAINTIFF:**
10 Ms. Holly G. Terrell
   Cirkiel & Associates
11 1901 E. Palm Valley Boulevard
   Round Rock, Texas 78664
12 (512) 244-6658

13 **FOR THE DEFENDANT:**
   Ms. Emily Laura Ardolino
14 Texas Attorney General
   300 West 15th Street
15 Floor 11
   Austin, Texas 78701
16 (512) 475-4103
        and
17 Mr. Tom Silver
   Assistant General Counsel
18 Office of General Counsel
   301 Tarrow Street, 6th Floor
19 Mail Stop 1230 TAMU
   College Station, Texas  77840-7896
20 (979) 458-6159

21

   Court Reporter:
22 Laura Wells, RPR, RMR, CRR
   515 Rusk Street, Suite 8004
23 Houston, Texas 77002

24 Proceedings recorded by mechanical stenography.
   Transcript produced by computer-assisted transcription.
25

                  *Laura Wells, CRR, RDR*

                                            **Appx.024**

administrators to get the shortest, most precise

explanation of the role that this exam plays at A&M and

elsewhere.  So we have three levels:  A&M, Texas, and the

United States.  And apparently, with some things, if you

keep the United States happy, it takes care of the others,

but that's not true of a lot of things, such as a driver's

license and commercial truck drivers.

MS. TERRELL:  Your Honor, I think something very

pertinent in the facts is at this point my client is being

treated properly and he is able and willing and ready to

perform these functions.  So he has gotten better.

THE COURT:  Wait.  His lawsuit is about what they

did back then.  If he could pass the test now, it doesn't

count.  He couldn't pass it at the time.  And I forget he

went and stayed out for a year, and did he take the test

again?

MR. SILVER:  He did.  He stayed out.  They gave

him more than a year and he would -- he failed to take the

test when he said he was going to take it and never took

it again after failing it the first time.

THE COURT:  How many people do you -- does that

happen often?

MR. SILVER:  No.  When they do fail then, you

know, the school gives them additional time to study

because if you don't pass that step test, you don't get to

```
 1              THE COURT:  I used to limit it just to medical
 2   personnel and then somebody said --
 3              MS. ARDOLINO:  They can come in all forms.
 4              THE COURT:  -- well, I can't work on Tuesdays and
 5   Thursdays because I go to see my priest to get over this
 6   terrible thing.  So anything he does for comfort and
 7   rehabilitation.
 8              MS. TERRELL:  Yes, sir.
 9              MS. ARDOLINO:  Then the other remaining issue
10   would be his damages, and that would be he is currently
11   enrolled in -- it's our understanding, anyway, that he is
12   currently enrolled in another medical school.  So we would
13   be looking at --
14              THE COURT:  Is that true?
15              MS. TERRELL:  Yes, Your Honor.
16              THE COURT:  Which one?
17              MS. TERRELL:  It's out of the country.  I can't
18   recall the name of it right now.  But he had to go outside
19   the U.S.
20              THE COURT:  That's good.  I say that's good
21   because he is getting ahead.
22              MS. TERRELL:  He is doing very well.
23              THE COURT:  The doctor I saw this morning was
24   born in Italy.  She was brought here as a small child by
25   her Italian doctor father.
```

*Laura Wells, CRR, RDR*

**Appx.026**

```
 1              THE COURT:  He can get the records and hand them
 2    to you.  They are his records.
 3              MS. ARDOLINO:  I think that -- yeah.  I think
 4    that we had discussed they were either going to provide
 5    the records themselves or provide a medical release so
 6    that we could.
 7              THE COURT:  They are his records.  Have him
 8    produce them.  But the list of everybody else, every
 9    doctor.
10              MS. ARDOLINO:  Right.
11              THE COURT:  And his application to the foreign
12    medical school.
13              MS. TERRELL:  Yes.
14              MS. ARDOLINO:  And I think his current records,
15    school records would be useful.
16              MS. TERRELL:  Yes.  Would you like a release for
17    that or do you want us to --
18              MS. ARDOLINO:  I think y'all may want to actually
19    provide those because they are out of the country and
20    so --
21              MS. TERRELL:  Understood.
22              MS. ARDOLINO:  -- that would be appreciated.
23              MR. SILVER:  We will get any applications and the
24    responses from the medical schools as well.
25              THE COURT:  Any medical school he applied to?
```

*Laura Wells, CRR, RDR*

**Appx.027**

25

```
 1   and I have probably set aside three verdicts.
 2       Anything else?
 3           MS. TERRELL:  No, Your Honor.
 4           MS. ARDOLINO:  No, Your Honor.
 5           THE COURT:  If y'all come up with something that
 6   you think you really need to do that we didn't cover, you
 7   jointly send me -- file a pleading that says additional
 8   discovery.  Tell me what it is.  And I'll probably say
 9   yes, but I have been known to say no.
10           MS. ARDOLINO:  Thank you, Your Honor.
11           THE COURT:  All right.
12       (Proceedings concluded at 11:42 a.m.)
13   Date: August 5, 2019
14                   COURT REPORTER'S CERTIFICATE
15       I, Laura Wells, certify that the foregoing is a
16   correct transcript from the record of proceedings in the
17   above-entitled matter.
18
19                       _____/s/ Laura Wells_____
20                       Laura Wells, CRR, RMR
21
22
23
24
25
```

11:41:35 (line 5)
11:42:04 (line 10)

*Laura Wells, CRR, RDR*

**Appx.028**

1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
2                         HOUSTON DIVISION

3   DANYAL SHAIKH                  .  C.A. NO. H-16-591
                                   .  HOUSTON, TEXAS
4   VS.                            .
                                   .
5   TEXAS A&M UNIVERSITY COLLEGE   .  JUNE 27, 2019
    of MEDICINE, et al             .  10:11 A.M. to 11:22 A.M.
6

7
                      TRANSCRIPT of CONFERENCE
8            BEFORE THE HONORABLE LYNN N. HUGHES
                  UNITED STATES DISTRICT JUDGE
9


10
    APPEARANCES:
11
    FOR THE PLAINTIFF:               MS. HOLLY G. TERRELL
12                                   Cirkiel & Associates, P.C.
                                     1901 E Palm Velley Blvd
13                                   Round Rock, Texas  78664

14

15  FOR THE DEFENDANTS:              MS. EMILY LAURA ARDOLINO
                                     Texas Attorney General
16                                   300 West 15th Street
                                     Floor 11
17                                   Austin, Texas  78701

18

19  ALSO PRESENT:                    MR. TOM SILVER

20

21  OFFICIAL COURT REPORTER:         MS. KATHY L. METZGER
                                     U.S. Courthouse
22                                   515 Rusk
                                     Room 8004
23                                   Houston, Texas  77002
                                     713-250-5208
24
    Proceedings recorded by mechanical stenography, transcript
25  produced by computer-aided transcription.

```
10:25:11    1   including that and anxiety and, of course, it's directly linked
            2   to his test-taking abilities.
            3        THE COURT:  So it's not as if he has been healed?
            4        MS. TERRELL:  He still has a disability, but he is
10:25:25    5   being treated, so he is able --
            6        THE COURT:  Ma'am, he is not healed from what he
            7   claims made it impossible for him to pass the test?
            8        MS. TERRELL:  No.  However, he is -- he has figured
            9   out, with the help of medical professionals, what the issue is
10:25:44   10   and is being treated so that he is able to take the test and go
           11   to medical school.
           12        THE COURT:  Why did he not take the test?
           13        MS. TERRELL:  Originally because he was still in the
           14   process of seeking treatment.
10:25:58   15        THE COURT:  So as long as he doesn't feel up to it, he
           16   has a disability and can't take it and they have to let him go.
           17   Do you have a medical report from a physician that says that at
           18   no time in the last -- was it a year it was left open for him?
           19        MS. ARDOLINO:  It was -- it was approximate --
10:26:23   20   actually a little bit over a year from the time -- or, no, I'm
           21   sorry.  Just short -- just shy of a year from the time that he
           22   first failed to the time that he ultimately withdrew.
           23        THE COURT:  Does he have a letter from the doctor back
           24   then saying, Don't take the test.  It will stress you too much?
10:26:46   25        MS. TERRELL:  I'm not aware of any letter that
```

10:26:48  1  specifically states as much.  I'm sure that when we designate

2  experts, we'll --

3        *THE COURT:*  No.  I want contemporaneous.  He's seeing

4  the doctor for a while at A&M's expense, right?  Y'all paid for

10:27:04  5  the psychiatrist, Mr. Silver?

6        *MS. ARDOLINO:*  Tom may be able to speak to how this

7  program works.

8        *MR. SILVER:*  Your Honor, all students at the medical

9  school had the ability to say, Hey, I'm, you know, having

10:27:20 10  stress and I'm not being able to, you know, deal with medical

11  school and they get up to six visits with a counselor or

12  whoever at the school's expense.  The school pays for it.  They

13  don't -- they give them a list of people they can go see.  The

14  school doesn't know who they go see.  It doesn't get the

10:27:40 15  records.  It's all -- it's just available to any student who is

16  going through some kind of, you know, stressful situation, be

17  it school related or outside of school related.

18        *THE COURT:*  Has Mr. Shaikh furnished the University

19  with those records?

10:28:04 20        *MS. TERRELL:*  Mr. Shaikh has furnished the University

21  with all the records that are in his possession.

22        *THE COURT:*  No, ma'am.  They're his records.  He needs

23  to get them and give them to A&M.

24        *MS. TERRELL:*  Understood, Your Honor.

10:28:26 25        *THE COURT:*  They're his records.  That's like some

10:28:28  1  businessman, occasionally they'll tell me, Oh, I don't have

2  those records.  Well, where are they?  They're at my

3  accountant's.  Go get them.  Doctors are just one of the

4  technicians you hire to get through life.  They probably

10:28:46  5  wouldn't like me putting it that way, but -- all right.

6                    Get closer to the microphone.

7            MS. TERRELL:  Yes.

8            THE COURT:  You all are speaking softly.  And when you

9  all don't speak up, she hurts me when we take a recess.

10:29:16 10                    So it is the case that -- has anybody at A&M's

11  Medical School been allowed a year to retake the test and not

12  known it and then come back later and say, Okay.  I'm okay now,

13  and do it?

14            MS. ARDOLINO:  Mr. Shaikh is the only person at least

10:29:55 15  going back ten and probably more years in the collective memory

16  of A&M's Medical School administration of any student

17  withdrawing for failure to take or pass the Step 1 exam and

18  then reapplying for admission.

19            THE COURT:  So, I forgot that.  That reminds me.  So

10:30:18 20  we have a failure and two no-shows and then a withdrawal?

21            MS. ARDOLINO:  That's correct.

22            THE COURT:  Is that right?

23            MS. TERRELL:  That is my understanding.

24            THE COURT:  Well, that's what the records say, and I

10:30:33 25  don't recall him ever having contested that.  So A&M -- now,

10:32:16  1          MS. ARDOLINO:  Well, he would -- in order to -- if he

       2  had been accepted for readmission, he would have had to take

       3  the Step 1 exam either if he had been entering as if he were a

       4  brand-new medical student, he would have gone through his two

10:32:33  5  years and then had to take the exam just like he did the first

       6  time --

       7          THE COURT:  Hopefully not.  Better.

       8          MS. ARDOLINO:  Hopefully he would have passed.  And

       9  so, but, yes, that always would be a requirement to take and to

10:32:49 10  pass the Step 1 exam.

      11          THE COURT:  But I think what you told me is the school

      12  doesn't necessarily reinstate them the day before the test that

      13  they flunk.  They reinstate them wherever they think they're

      14  current -- well, as I understand, he went somewhere else.

10:33:13 15          MS. TERRELL:  Yes, Your Honor.

      16          THE COURT:  Where did he go?

      17          MS. TERRELL:  To a medical school in the Caribbean.

      18          THE COURT:  Did he graduate?

      19          MS. TERRELL:  Not yet.

10:33:30 20          THE COURT:  Do they have his records at that school?

      21          MS. TERRELL:  I don't believe that it does and the

      22  reason --

      23          THE COURT REPORTER:  Can she get closer to a --

      24          THE COURT:  All right.

10:33:42 25          MS. TERRELL:  I am currently --

10:33:44  1          THE COURT:  Get closer.  Tammy Wynette doesn't sing
          2  from 2 yards behind the mic.
          3          MS. TERRELL:  There was a miscommunication, and I'm
          4  currently working with my client to get all the records that I
10:33:54  5  can from the new medical school.
          6          THE COURT:  Get all the records.
          7          MS. TERRELL:  Yes, Your Honor.  We are going to get
          8  all the records.
          9          THE COURT:  As he goes through that school, they hand
10:34:09 10  him copies of lots of records.  And he's old enough at this
         11  point not to do what most undergraduates do and just throw away
         12  all that stuff from the dean's office.  But he needs
         13  immediately to get the entire record of his application,
         14  admission and progress and whatever else is in there.
10:34:54 15          And what evidence does Mr. Shaikh have that --
         16  did the Court of Appeals talk about the difference between not
         17  continuing him as a student?  Well, that was his choice though.
         18  So the real question is the reapplication rejections, right?
         19  That's all that's left.  So he has to have -- we know that he
10:35:24 20  was not accepted in '15 and '16, right?
         21          MS. TERRELL:  Yes, Your Honor.
         22          THE COURT:  What does he know besides the fact that he
         23  was not admitted and he has -- I don't know how you have a
         24  rehabilitation, but he has a problem that is addressed by the
10:35:53 25  Rehabilitation Act, that it was because of it?

10:39:54  1          *MR. SILVER:*  Your Honor, I know that from my

        2  recollection of the application, he mentioned in there --

        3          *THE COURT REPORTER:*  Microphone.

        4          *MR. SILVER:*  -- and in his interviews that --

10:40:03  5          *THE COURT:*  You've got do like this (indicating).

        6          *MR. SILVER:*  Okay.  He mentioned in his interviews in

        7  the 2016, that, oh, I finally found out what was wrong with me

        8  about, you know, my test taking anxiety.  I had this pituitary,

        9  you know, tumor, and that's why I was having that problem.

10:40:21 10          And I don't think that he attached any medical

       11  record to his application, but he made it known that that was

       12  something that had -- that he had found the answer to in this

       13  2016 application and interview process.

       14          So, if I might --

10:40:43 15          *THE COURT:*  Sure.

       16          *MR. SILVER:*  -- one of the things that we have been

       17  told and what the Court has been told in this case is that

       18  Mr. Shaikh is currently in medical school in the Caribbean.

       19  Yet in the documents that we were provided recently, it shows

10:41:01 20  that he has made an application to a perfusionist school at the

       21  Heart Institute here in Houston.  And they provided us his

       22  application.  And it says the last place that he went to school

       23  is at Texas A&M University School of Medicine.  It doesn't say

       24  anything about any Caribbean medical school.  We've not been

10:41:25 25  provided any documents to establish that he's in some Caribbean

```
10:41:29   1   medical school and --
           2           THE COURT:  Is it Granada that has the medical school?
           3           MS. ARDOLINO:  I don't know the answer to your
           4   question, but that does segue into, you know, after our last
10:41:46   5   conference --
           6           THE COURT:  Well, you're a lawyer.  You can make
           7   anything segue.  Now, here's what --
           8           MS. ARDOLINO:  He did a way better job at it than I
           9   did though.  But after -- following our last conference in
10:41:58  10   April, this Court issued an order for the parties to exchange
          11   certain documents and information and for A&M to file certain
          12   things, which we did.  Since we had an opportunity to review
          13   the documents that were provided to us by the plaintiff and we
          14   have alerted opposing counsel to certain deficiencies in those
10:42:17  15   documents, including that we are uncertain that we've received
          16   all of his medical records, as we discussed before, we have
          17   received no current records from his medical school and nor
          18   have we received any documents indicating that he is or has at
          19   any point in time since his withdrawal from A&M been in a
10:42:40  20   medical school, which is contrary to, I think, what we had
          21   understood.
          22           And we are -- we also have not received, with the
          23   exception of a recent application that Mr. Silver just
          24   mentioned to the perfusion school in Houston, we have not
10:43:00  25   received any of his applications or acceptance or denial
```

10:43:04  1    letters from any other medical schools that he has applied to.

2               THE COURT:  Or any other school?

3               MS. ARDOLINO:  Or any other school with the exception

4    of this perfusion school that we --

10:43:15  5               THE COURT:  But it doesn't have to be a medical

6    school.

7               MS. ARDOLINO:  Well, it doesn't necessarily have to be

8    a medical school, although, you know, in order -- one of the

9    elements of Mr. Shaikh's damages is he is claiming that his

10:43:28 10    ability to pursue his career in the medical profession has been

11    impeded by Texas A&M's actions.  And he has conceded that he

12    can apply to other medical schools, but right now we don't have

13    any evidence that he is even attempted to do so.  So --

14               THE COURT:  Okay.  I got the idea.

10:43:53 15               MS. ARDOLINO:  Yeah.

16               THE COURT:  Ms. Terrell, when did you join this case?

17               MS. TERRELL:  I joined this case, I think it was

18    probably the first of this year, I might have filed my notice

19    of appearance.

10:44:07 20               THE COURT:  Okay.

21               MS. TERRELL:  It was a few hearings ago.

22               THE COURT:  Okay.  So this is not personal.  But

23    Mr. Shaikh brought this claim in July of 2016.  If we wait just

24    three days, it will be July '19.  And all the stuff was asked

10:44:32 25    for.  The first thing I do is try to figure out what the facts

21

```
10:44:37   1  are.  Lawyers want to talk about law.  You don't know what law
           2  applies till you know what happened.  And so all the records
           3  that Mr. Shaikh has of alternative employment applications as
           4  well as acceptances, all his medical records or all -- any
10:45:01   5  other school, medical or otherwise, to which he has gone, get
           6  them his Social Security records -- every time you file a tax
           7  return, the IRS gives the information to Social Security so
           8  they can calculate how much money to give you if you live long
           9  enough.
10:45:26  10          So all those things should have been done about
          11  three years ago.  I don't recall having seen any post-A&M data,
          12  like names of schools.  And you said earlier, you don't have
          13  them, which means Mr. Shaikh has done nothing to substantiate
          14  his claim about describing how the Grenada School of Medicine
10:46:01  15  has accepted him and what he's been allowed to do, showing that
          16  A&M should have to, or whatever.  But they're entitled to see
          17  these things.
          18          Did you know about the phlebotomist or whatever
          19  it is he's doing?
10:46:18  20          MS. ARDOLINO:  I'm sorry?  The phlebotomist?
          21          MS. TERRELL:  Perfusionist school.
          22          MR. SILVER:  Oh, perfusionist.
          23          THE COURT:  What is that?
          24          MR. SILVER:  I had to look it up.  It's something
10:46:30  25  about -- it's in the medical field.  It's like a nurse or
```

10:50:28  1   supposed to produce what we had.  I'm generally accustomed to

2   opposing counsel requesting their own set of records.  We are

3   willing to either request them ourselves and hand them over or

4   we can sign a waiver and they can request the records so that

10:50:42  5   they know they have the entirety if that --

6            THE COURT:  Well, the choice is up to you.

7            MS. ARDOLINO:  Well, pursuant to your Court's order,

8   the plaintiffs were -- the plaintiff was already supposed to

9   request and hand over those medical records.  I think our

10:50:58  10   request would be that he request those medical records directly

11   from his provider, along with a business record affidavit, so

12   that we don't have to call the providers in order to

13   authenticate the documents, and in compliance with the Court's

14   order.  So that's what we --

10:51:17  15           THE COURT:  Do you think he was going to object to his

16   own doctor's records?  I guess if they're bad.

17           MS. ARDOLINO:  I would hope not, but it's always

18   helpful.

19           THE COURT:  Yes, sir.

10:51:27  20           MR. SILVER:  Well, an affidavit, Your Honor, would

21   allow us to know if we have the entire record, if the custodian

22   said, I'm providing pages 1 through 99, these are all of the

23   records that I have regarding Mr. Shaikh and his treatment

24   here, instead of right now what we've been produced is like

10:51:45  25   piecemeal pages here, there, letters from doctors.

25

```
10:51:51   1          THE COURT:  All right.  So do you want them to get --
           2   her or him --
           3          MS. ARDOLINO:  Yes.
           4          THE COURT:  All right.  Yes, please, ma'am.
10:52:05   5          MS. TERRELL:  Understood.
           6          THE COURT:  The medical records, if any help he's got,
           7   including things not related to this.  You know, if he got hit
           8   with a baseball, doing something and went to a doctor.  His
           9   entire medical history since he moved to -- where is your
10:52:27  10   medical school?  In Bryan?
          11          MS. ARDOLINO:  College Station.  Correct?
          12          MR. SILVER:  College Station-Bryan, Your Honor.
          13          THE COURT:  Since he showed up in College Station
          14   later on, if there are -- well, do you know when he started --
10:52:50  15   you don't know what his medical history was before he showed up
          16   at A&M and this problem?
          17          MS. TERRELL:  My understanding is that he didn't have
          18   any significant issues or the typical stuff that --
          19          THE COURT:  That's my understanding, too, but I don't
10:53:14  20   know anything.  So he's to produce a schedule of all medical
          21   doctors -- how old is he?  28 or something?
          22          MS. TERRELL:  Yes.  And, Your Honor, we've done that.
          23          MS. ARDOLINO:  Your Honor, we were provided a list of
          24   just names with no addresses or other information and just a
10:53:37  25   general description of what the treatment or visit was for.  So
```

| | |
|---|---|
| 11:16:52 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 11:17:22 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 11:18:04 | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| 11:18:33 | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| 11:18:51 | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| 11:19:06 | 25 |

1  can snap it -- you can break it into, I guess, four sheets,
2  it's three months apiece, and it will hang right.  But it's
3  awkward still.  All that stuff needs to be delivered from them
4  by September 20th.  And for people who will require a subpoena,
5  my order will authorize you to subpoena the records from all
6  these categories of folks.  But he's got to -- there's no way
7  we can know where he applied for school or work.  So he's got
8  to do that.  And that will put us to -- he will be deposed on
9  October 16th.
10              And, Ms. Terrell, please, ma'am, tell him to get
11  serious.  He brought all this stuff.  If he'd furnished all
12  this information, we might could have told there was something
13  here.  But what he produced, in my judgment, and what's just
14  been reversed by the committee, only one out of twelve, so
15  that's not too bad, was that it needed to be relooked at.  So
16  he's had three years to do this.
17              MS. TERRELL:  Understood, Your Honor.  I will take
18  care of it.
19              THE COURT:  And, again, it's not you.
20              MS. TERRELL:  Thank you, sir.
21              MS. ARDOLINO:  I do have one more request, which is we
22  do not know whether plaintiff intends on designating any
23  experts in this matter.  But to the extent that he does, we
24  would --
25              THE COURT:  Let's wait until you see what the

```
11:21:46   1          THE COURT:  In where?
           2          MS. TERRELL:  Pearland.
           3          THE COURT:  Oh, Pearland.
           4          MS. TERRELL:  Yes, Your Honor.
11:21:49   5          THE COURT:  So you're almost halfway to Austin.  It's
           6   the wrong direction, but in distance.
           7          MS. TERRELL:  It's far.
           8          THE COURT:  It's far, but it was a nice small town
           9   when one of us in this room was young.  You drive through
11:22:06  10   20 miles of country and come upon it and lots of farms and
          11   things.
          12                All right.  Thank you, counsel.
          13          MS. TERRELL:  Thank you.
          14          MS. ARDOLINO:  Thank you, Your Honor.
11:22:18  15      (Concluded at 11:22 a.m.)
          16                          * * *
          17   I certify that the foregoing is a correct transcript from the
          18   record of proceedings in the above-entitled cause, to the best
          19   of my ability.
          20
          21   /s/ Kathy L. Metzger                  8-18-2019
               Kathy L. Metzger                      Date
          22   Official Court Reporter
          23
          24
          25
```